# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

JOSHUA JARRETT, JESSICA JARRETT

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No.

## COMPLAINT

Plaintiffs, Joshua and Jessica Jarrett, file this complaint against the United States of America pursuant to 26 U.S.C. §7422 and 26 U.S.C. §6532, and allege as follows:

### BACKGROUND

1.     Joshua Jarrett lives in Nashville, Tennessee with his wife, Jessica.

2.     Jarrett uses a cryptocurrency called Tezos. Cryptocurrency is a form of digital property. Cryptocurrency tokens can be freely held and transferred.

3.     Users can also create new cryptocurrency tokens, including Tezos tokens, through a process called "staking."

4.     Every year, Jarrett creates thousands of new Tezos tokens by staking.

5.     Jarrett and the IRS disagree whether the Tezos tokens that he creates are his "income" at the time he creates them under the federal income tax. 26 U.S.C. §61(a).

6.     Jarrett takes the position that he cannot be taxed until he sells the tokens.

1

New property is not taxable income; instead, taxable income arises from the proceeds from the sale of that new property. In all other contexts, the IRS recognizes that new property is not taxable income. When a taxpayer creates new property—whether a farmer's crop, an author's manuscript, or a manufacturer's product—he is not taxed until he sells it. Only upon sale of new property does income "come in." As the leading treatise explained in the year that the income tax was introduced, "the measure of taxable net income is *not* the amount or value of the products of the year's operation, but the net proceeds of *sales*." Black, *A Treatise on the Law of Income Taxation* 96 (1913) (emphases added).

7.     The rule that new property is not income follows from the plain text of the tax code. *See* 26 U.S.C. §61 (limiting tax power to "income" that is "derived" from a "source"). When a taxpayer creates new property, that property is not "income" because it does not "com[e] in" from anyone. *United States v. Phellis*, 257 U.S. 156, 169 (1921). It also is not "derived" from a "source" because it's not received from someone else. 26 U.S.C. §61(a). And it is not "clearly realized" given that it is not conveyed in a payment or exchange. *Comm'r v. Glenshaw Glass*, 348 U.S. 426, 431 (1955).

8.     Jarrett's Tezos tokens are new property. He uses his existing tokens, computer equipment, and computer code to create the tokens through the process of staking. Nobody else owns them or creates the tokens first, nobody transfers them to him, and nobody can prevent him from creating them.

2

9.     But the IRS takes the position that, unlike creators of all other new property, the creators of new digital asset tokens must pay income tax on the "fair market value" of the property as soon as they create the tokens, *not* when they receive proceeds in exchange for them. *See* Rev. Rul. 23-14, 2023-33 I.R.B. 485, *available at* perma.cc/ENN6-DCMP. In other words, the IRS believes that the tokens are taxable income at the time of creation, based on their estimated value. It tells taxpayers like Jarrett to pay income tax on the tokens before they receive any income from them. The IRS's position contradicts the governing statutory text, the agency's practice in all other contexts, and the leading authorities.

10.    The tokens that Jarrett created in 2020 cannot be included in his taxable income for a second, independent reason. Taxable income requires not only that the taxpayer receive the proceeds from someone else, but also that the proceeds represent "economic gain." *Moore v. United States*, 144 S. Ct. 1680, 1691 (2024). If something isn't a gain, it cannot be "income" under Section 61(a) of the tax code, which provides the purported authority for taxing Jarrett's tokens here.

11.    But when people like Jarrett stake, they create new tokens in proportion to their existing tokens, which the staking process correspondingly *dilutes*. The value of new tokens is therefore offset by the corresponding dilution in value of the staker's existing tokens due to the increase in supply of the tokens. In other words, staking allows users to create new tokens to maintain the same economic position. Because

3

most Tezos token holders stake, taxing the value of Jarrett's new tokens drastically overstates Jarrett's economic gain from staking, resulting in overtaxation.

12.     This case is not the first time that Jarrett has contested the taxability of his staked tokens. For the 2019 tax year, he paid the disputed tax on his new Tezos tokens and filed a refund suit before this Court. Shortly before dispositive briefing began, the IRS intentionally mooted that case by mailing Jarrett a refund check, depriving him an opportunity for judicial review. *See Jarrett v. United States*, 2022 WL 4793235 (M.D. Tenn. Sept. 30). Because the IRS refused to agree to treat Jarrett the same in future years or be bound by a judgment against it, Jarrett has now been forced to go through the same costly, time-consuming process again for the 2020 tax year, culminating in this lawsuit. He has paid tax on his newly created tokens, gone through the administrative refund process, and again been ignored by the IRS. He brings this lawsuit to finally get judicial resolution of this problem that recurs for him every year.

## THE PARTIES

13.     Plaintiff Joshua Jarrett is an individual who resides in Nashville, Tennessee.

14.     Plaintiff Jessica Jarrett is an individual who resides in Nashville, Tennessee.

15.     Defendant is the United States of America, who stands in for its agency the Internal Revenue Service.

4

## JURISDICTION AND VENUE

16.     This Court has jurisdiction under 28 U.S.C. §1346(a)(1), 26 U.S.C. §7422, and the judiciary's general equitable and legal powers.

17.     Venue is proper in this judicial district under 28 U.S.C. §1402(a)(1) because the Jarretts reside in the Middle District of Tennessee. Intradistrict venue is proper in the Nashville Division pursuant to 28 U.S.C. §123(b)(1) & Local Rule 77.01(a).

18.     Pursuant to 26 U.S.C. §6532 and 26 U.S.C. §7422, the Jarretts bring this action after paying the disputed federal income taxes that were erroneously assessed, and more than six months from their timely filing of a refund claim with the Internal Revenue Service for the overpayment of federal income taxes, plus statutory interest.

19.     The Jarretts have satisfied all conditions precedent to filing.

## BACKGROUND

### I.     Jarrett creates Tezos tokens.

20.     Jarrett lives in Nashville with his wife Jessica and their children. He has led a successful career as an insurance executive and the founder of a data-driven fitness gym.

21.     Jarrett uses digital assets.

22.     A digital asset is any "digital representation of value recorded on a cryptographically secured distributed ledger or similar technology." *Digital Assets*, IRS.gov, perma.cc/3Y7P-95BC.

5

23. Digital assets include cryptocurrencies like Bitcoin and Ethereum. Jarrett uses a cryptocurrency called Tezos.

24. Individual units of a cryptocurrency are called tokens.

25. "For U.S. tax purposes, digital assets are considered property, not currency." *Digital Assets*, IRS.gov, perma.cc/6HU7-EZ4W.

26. Like other property, cryptocurrency and other digital asset tokens can be created, bought, held, and transferred to others.

27. The cryptocurrency that Jarrett uses, Tezos, consists of computer software, meaning lines of code.

28. Anyone in the world can use Tezos. Tezos is not a legal person and is not controlled by a legal person. Tezos is just lines of code. Its functioning relies on users running that code, not any central entity. There is no "Tezos Inc."

29. Thousands of people use the Tezos software.

30. People who use the Tezos software can freely hold, transfer, and receive Tezos tokens.

31. They can also create new Tezos tokens.

32. People create new Tezos tokens through "staking."

33. Staking is the process by which people confirm that Tezos users' transactions are valid, create "blocks" of transactions that publicly record those transactions, and create new tokens.

6

34. These blocks of transactions form the "blockchain," which is a complete public record of token transactions and of the creation of new tokens.

35. Each time a new block is created that adds to the Tezos blockchain, new Tezos tokens are created.

36. Jarrett creates new Tezos tokens by staking.

37. To "stake," a person must first hold some existing Tezos tokens. He must also have access to computer equipment and code.

38. Using those existing tokens and computer equipment and code, a person may then collect transactions by other Tezos users, and use advanced math and cryptography to confirm those transactions are valid—that is, to confirm that the Tezos users have the tokens required to complete their transactions and are otherwise compliant with the transaction rules.

39. Then, the staker publishes a group, or block, of these transactions so that other Tezos stakers and users can also confirm they are valid. When others confirm the block, it becomes a part of the Tezos blockchain and the transactions and new tokens in the block can be viewed by anyone.

40. The Tezos blockchain is stored and updated with new blocks of transactions by many different people around the world. For this reason, and because it records the token balances of its users, the blockchain is sometimes described as a "distributed ledger." Anyone can maintain a copy of this ledger and anyone can keep

7

track of which accounts hold which tokens.

41. When a staker successfully creates a new block of transactions or confirms it is valid, that person also creates a small number of new Tezos tokens.

42. The person's act of staking creates the new Tezos tokens. The added block includes the announcement that the stakers who created and confirmed the new block now hold the new tokens.

43. People create the new tokens according to software rules that other participants also abide by, which strictly limit the conditions for creating tokens. The software enables people to create new tokens only when they successfully stake. This limitation encourages people to correctly create and confirm blocks of transactions, which keeps the cryptocurrency functioning.

44. The rules also limit stakers' opportunity to create blocks and tokens based on their share of existing tokens. So the holder of 1 percent of all existing tokens is presumptively able to create 1 percent of all new tokens. The rules governing token creation also strictly limit the quantity of new tokens.

45. Sometimes, stakers create new tokens by combining their efforts with another person, for example by providing the required tokens while another person provides the required computer hardware.

46. Throughout 2020, Jarrett regularly staked.

47. For example, on October 6, 2020, by staking and using a Mac laptop

8

running Tezos software in his home, Jarrett created Tezos block number 1,159,060. In creating that new block, Jarrett created 40 new Tezos tokens. Jarrett repeated the process of creating and confirming blocks many times over during the course of the year.

48. As a result of staking, Jarrett created approximately 13,714 Tezos tokens in 2020.

49. Those Tezos tokens were created by Jarrett and immediately belonged to him. They were not paid to him by any other person or entity. They did not exist before he created them, and no one else created them. They were no one's expense or expenditure. No one else shows a debit that corresponds with Jarrett's credit.

50. In 2020, Jarrett did not sell or otherwise dispose of those 13,714 tokens.

51. Those 13,714 tokens had an estimated value of $32,836 when Jarrett created them. Tezos tokens can be bought and sold in various markets. Their price fluctuates, often significantly. Using historical market price reports, Jarrett assigned a dollar value to his new tokens based on the date each token came into his control. The resulting sum was $32,836.

## II. Jarrett and the IRS disagree over the taxation of his new tokens.

52. Jarrett believes that income will arise when he sells the tokens, as with any other new property. But the IRS believes that Jarrett must pay taxes on the estimated value of the tokens the moment that Jarrett creates them.

**A. Jarrett believes that he must pay taxes on the income that he receives when he sells the tokens.**

53.     Jarrett believes that new digital tokens must be treated just like any other new property.

54.     When someone creates new property, it does not "com[e] in" from anyone. *Phellis*, 257 U.S. at 169. It is not derived from any source. Instead, it is the property of the creator and goes out from the creator only if he chooses to sell.

55.     New property is therefore not taxable income upon creation.

56.     Instead, it results in taxable income only upon disposition, when the creator of the new property sells it.

57.     Therefore, Jarrett does not owe income tax on the likely value of each token at the time he creates it.

58.     Instead, he must pay tax based on the actual payments that *come in* for the new tokens when he sells them.

59.     He must pay that tax when the income is realized, at the time of sale, rather than when he creates the property.

60.     Jarrett's approach is commanded by the Internal Revenue Code and is followed by the IRS for all other kinds of new property.

**B. The IRS believes that Jarrett must pay taxes on the estimated market value of the tokens at the moment he creates them.**

61.     According to the IRS, cryptocurrency stakers who create new tokens must pay tax on the estimated market value of the tokens on the date and time of creation,

not at the time of sale. *See* Rev. Rul. 23-14, 2023-33 I.R.B. 485.

62.     For some time, in guidance documents, the IRS indicated but did not explicitly state that it believed that stakers like Jarrett must pay taxes on the estimated market value of new tokens at the time of creation. *See* Notice 14-21, 2014-16 I.R.B. 938-40 (Apr. 14, 2014), perma.cc/7ZYD-5ESE; *Updates to Question on Digital Assets; Taxpayers Should Continue to Report All Digital Asset Income*, IRS.gov (Jan. 24, 2023), perma.cc/D6A9-QHEM.

63.     Then in 2023, the IRS officially announced its position that stakers like Jarrett must pay tax at the time of creation. It published Revenue Ruling 2023-14, which says that, unlike every other creator, the creator of cryptocurrency tokens must pay tax on the "fair market value" of his tokens as soon as he "has the ability to sell, exchange, or otherwise dispose of" them, rather than when he actually disposes of them. Rev. Rul. 23-14, 2023-33 I.R.B. 485.

64.     The IRS's Revenue Ruling tells Jarrett that "[i]f a cash-method taxpayer stakes cryptocurrency native to a proof-of-stake blockchain," like Jarrett does, "and receives additional units of cryptocurrency as rewards when validation occurs," which the IRS believes Jarrett does, then "the fair market value of the validation rewards received is included in the taxpayer's gross income in the taxable year in which the taxpayer gains dominion and control over the validation rewards." Rev. Rul. 23-14, 2023-33 I.R.B. 485. According to the IRS, "[t]he fair market value is determined as of

11

the date and time the taxpayer gains dominion and control over the validation rewards." *Id.*

65.     The IRS's Revenue Ruling "definitively sets forth the IRS' position that staking rewards are income for US federal income tax purposes." *IRS Releases Guidance on Cryptocurrency 'Staking' Rewards*, Cooley (Aug. 4, 2023), perma.cc/R2H3-7UG9. These rulings state the "official" position of the IRS and "represent the conclusions of the Service on the application of the law to the pivotal facts stated." *General Overview of Taxpayer Reliance on Guidance Published in the Internal Revenue Bulletin and FAQs*, IRS (last updated Apr. 15, 2024), perma.cc/YP66-ERM9.

66.     Tezos tokens are a form of virtual currency as defined by the IRS, so the IRS's position applies to Jarrett's Tezos tokens. *See* Notice 14-21, 2014-16 I.R.B. 938-40, perma.cc/7ZYD-5ESE; *see also Gov't 28J Response*, Dkt. 37, at 1, *Jarrett v. United States*, 79 F.4th 675 (6th Cir. 2023) (No. 22-6023) (agreeing that the 2023 Revenue Ruling "is at odds with" Jarrett's position).

67.     But the IRS has offered no explanation why Section 61 of the tax code would treat these tokens differently from all other new property. It has not identified any previous owner of the tokens, offered an account of any payment transaction from any such owner to the staker, or explained how new tokens could merit singular treatment under Section 61 of the tax code.

12

### III.  The IRS is mistaken: Jarrett does not owe tax upon creation.

68.  As with all other new property, Jarrett's cryptocurrency tokens are not taxable upon creation.

#### A. New property is not taxable income.

69.  As relevant here, the code imposes a tax only on taxpayers' "taxable income." 26 U.S.C. §1. "Taxable income" means "gross income" minus deductions. 26 U.S.C. §63(a).

70.  And "gross income" means "all income from whatever source derived." 26 U.S.C. §61(a).

71.  Section 61(a) of the tax code also provides a nonexclusive list of types of income that are included within gross income. No express provision of Section 61, or of any other section of the tax code, or of any regulation thereunder, treats as income new cryptocurrency tokens or any other new property.

72.  New property—property not received from another person—has never been taxable income. Instead, income arises from the disposition of new property.

73.  New property is not taxable income under the plain text, the leading authorities, practice, and common sense.

74.  Under the plain text of Section 61(a), Jarrett's new tokens are not taxable income for three independent reasons.

75.  First, taxable "income" must "com[e] in." *Phellis*, 257 U.S. at 169. For property to "come in," it must be received from someone. "Income means what has

come in, or receipts." *Mut. Ben. Life Ins. Co. v. Herold*, 198 F. 199, 215 (D.N.J. 1912); *see also Income*, Black's Law Dictionary 612 (2d ed. 1910) ("that which comes in or is received"); *accord Taft v. Bowers*, 278 U.S. 470, 481 (1929). The income tax "is a tax on what comes in, on actual receipts.'" Black, *supra*, at 77. New or created property has not been received from anyone, so it has not come in. It is therefore not "income."

76.     Second, taxable income must be "derived" from a "source." 26 U.S.C. §61(a); U.S. Const., am. XVI. The word "derive" means "[t]o receive, as from a source or origin" and "to draw." *Derive*, *Webster's New International Dictionary* 601 (1913). For income to be "derived," it must be received from someone else "through a sale or other transaction." *Moore*, 144 S. Ct. at 1701 (Barrett, J., concurring). New property is not derived from a source; it is created or constituted by the taxpayer himself. *See, e.g.*, Black 76-77; *United States v. Safety Car Heating & Lighting Co.*, 297 U.S. 88, 99 (1936). New property is therefore not taxable income.

77.     Third, for something to be taxable "income," it must also be "clearly realized." *Glenshaw Glass*, 348 U.S. at 431; *see also MacLaughlin v. All. Ins. Co. of Philadelphia*, 286 U.S. 244, 249 (1932) ("Realization of the gain is the event which calls into operation the taxing act"); *Eisner v. Macomber*, 252 U.S. 189, 211 (1920). A fundamental aspect of realization is "to *convert* any kind of property into money." *Realize*, Black's Law Dictionary 993 (2d ed. 1910) (emphasis added). Taxable income refers only to proceeds realized "from the sale or other disposition of property." *MacLaughlin*, 286 U.S. at 249.

14

Someone's creation of new property involves no conversion of property into money. The later sale of that property involves the conversion of property into money. Therefore, the creation of new property does not involve realization and is not taxable income.

78.     Authorities have long agreed with these textual interpretations of 26 U.S.C. §61 and that new property is not taxable income. The authoritative treatise on income taxable in 1913 explained that "the measure of taxable net income is *not* the amount or value of the products of the year's operation, but the net proceeds of *sales*." Blackt 96 (emphases added). It has since been settled that "[i]n the case of self-created property, income is not realized until the self-created objects are sold." Dodge, *Accessions to Wealth, Realization of Gross Income, and Dominion and Control*, 4 Fla. Tax Rev. 685, 688 (2000). "[I]t cannot be too strongly insisted upon that the word 'income,' when properly used, is applicable only to *receipts*." Black 76 (emphasis added).

79.     Practice in all other contexts follows the rule that new property is not taxable income. The IRS's new reading of "all income from whatever source derived" to include property not received as payment from someone else would upset a century of established practice and sow deep uncertainty over the reach of the tax code.

80.     For example, if a farmer plants vegetables, he does not pay income tax on the likely value of each vegetable the minute that it sprouts. Instead, he pays tax on the payments that he receives from buyers of the vegetables when he sells them. *See* Black

76-77. Until he sells the vegetables, he has a gain in the form of new property, but he does not have taxable income. *See id.* at 92-93.

81.     Likewise, if Stephen King types a valuable manuscript, he does not pay income tax on the millions of dollars in likely value of the manuscript when he finishes typing. Instead, he pays tax on the payment he receives from a buyer of the manuscript when he sells it, even if in a future year.

82.     If a manufacturing company creates millions of widgets, it does not pay income tax on the likely value of the widgets as they roll off the assembly line. Instead, it pays tax on the payment it receives from buyers of the widgets when it sells them.

83.     The same is true for all types of new property. If a fisherman catches a fish, he does not pay income tax on the likely value of the fish when he catches it. Instead, he pays tax on the payment he receives when he sells it. And when a landowner mines natural resources, he does not pay income tax on the likely value of the minerals when he finds them. Instead, he pays tax on the payment he receives when he sells them. *See* Black 94 ("The owners of mines producing coal, gold, silver, or other minerals, or of nitrate beds or other similar natural deposits, or of oil or natural gas wells, are assessable for the income tax upon the net profits realized by the *sale* of their products in each year." (emphasis added)).

84.     The rule that new property is not income reflects common sense and the constitutional limits on the federal taxing power. An income tax is not a tax on property.

16

The Constitution prohibits unapportioned direct taxes. *See* Art. I, §8, cl. 1; §9, cl. 4. A tax on property is a quintessentially direct tax. *Moore*, 144 S. Ct. at 1687-88. And the income tax is not apportioned, so it cannot reach property. *Id.* The distinction between taxes on property and taxes on income is fundamental to our Constitution and imposes an essential limit on Congress's taxing power.

85.    The income tax is not a tax on productivity, gains, or value. Income is "not" the same as a "gain accruing to capital" or "growth or increment of value in the investment." *Bowers*, 278 U.S. at 481 (cleaned up). The income tax is not a tax on creation. *See Safety Car Heating & Lighting Co.*, 297 U.S. at 99; *see also Moore*, 144 S. Ct. at 1701 (Barrett, J., concurring) ("A patent is an inventor's property, and royalties are the income she receives from licensing it."); *Comm'r v. Indianapolis Power & Light Co.*, 493 U.S. 203, 214 (1990) ("[A] taxpayer does not realize taxable income from every event that improves his economic condition."); Black 1 ("An income tax … is not a tax upon personal exertion for gain, whether combined with the employment of capital or not, but upon the fruits thereof. An income tax is in effect a tax upon earnings").

86.    The income tax is a tax only on *income*. It is a tax on payments that come in—that are received from others. New property may be the taxpayer's property, reflect the taxpayer's productivity, and be the taxpayer's gain. But it is not income.

87.    Other features of new property are irrelevant to whether it is taxable income. For example, it is irrelevant whether the creator of new property depends on

17

material or technical inputs from others. Creators may rely on electricity, inventions, hardware, and software produced by other people to make their new property. But if they are still bringing about new property, then it is not income. Even though Stephen King's million-dollar manuscript depends on computers and electricity and keyboard hardware and word-processing software, it is still his new property and therefore not taxable income.

88.     It is also irrelevant if the value of the new property derives from an existing system or rules. Creators may operate within the bounds set by an existing market or system to make their new property. Even though the fisherman catches valuable fish according to the strict and necessary boundaries and regulations governing commercial fishing, his fish are still new property and therefore not taxable income.

89.     And it is irrelevant if the creation of new property depends upon inputs established by a community that benefits from the new property. Even if the farmer operates using a water subsidy without which no farming would be feasible, paid for by the community to ensure a sufficient food supply, his vegetables are still new property and therefore not taxable income. The farmer may receive a benefit from the community through the subsidy that makes his crop possible, and may benefit the community through his economic activity. But so long as the vegetables are his new property, they give rise to taxable income only upon sale.

90.     What matters is whether something is new property—property not

18

previously belonging to anyone else. If so, it is not taxable income.

**B. Jarrett's tokens are new property.**

91.    Jarrett's 13,714 tokens are new property.

92.    Jarrett's 13,714 tokens were created by Jarrett.

93.    Even the IRS agrees that "validation rewards," its term for the new tokens made through staking, are "*newly created* units of the cryptocurrency." Rev. Rul. 23-14, 2023-33 I.R.B. 485 (emphasis added).

94.    Jarrett's 13,714 tokens did not previously belong to any other person, including as defined in 26 U.S.C. §7701(a)(1).

95.    They did not previously belong to any Tezos entity or association.

96.    Nobody else previously owned the tokens.

97.    Jarrett caused them to exist.

98.    The IRS agrees that stakers "add blocks to the blockchain." Rev. Rul. 23-14, 2023-33 I.R.B. 485.

99.    Jarrett caused blocks to be added to the blockchain, and caused the new tokens to exist, by employing his tokens along with computer code and equipment.

100.    His own tokens, computer equipment, and computer code brought the tokens into being.

101.    Nobody could stop Jarrett from creating the new tokens.

102.    No person in the world can even control the rules according to which Jarrett creates his new tokens.

19

103. Jarrett controlled the token creation process.

104. If nobody staked, there would be no new blocks and no new tokens.

105. The tokens would not have come into existence without someone doing the work to create them, as Jarrett did.

106. Jarrett did not receive the new tokens from anyone.

107. Applying the universal rule that new property gives rise to taxable income at the time of disposition, not the time of creation, Jarrett's 13,714 created tokens in 2020 are therefore not taxable income. They are not "income." 26 U.S.C. §61(a); U.S. Const., am. XVI. And they do not fall within any category in the list of types of income that are included within gross income. 26 U.S.C. §61(a).

108. They were not "derived" from a "source." *Id.*; U.S. Const., am. XVI.

109. And they were not "clearly realized." *Glenshaw Glass*, 348 U.S. at 431.

110. Instead, like every other kind of property, Jarrett's new tokens will give rise to income only upon disposition.

111. Tokens created through staking and other methods of adding blocks to cryptocurrency blockchains are the only property in America that the IRS thinks are taxed upon creation.

112. They are the only property that the IRS thinks are income despite not previously belonging to someone else.

113. Although Congress already answered this question against the IRS when

it first wrote the tax code, the only congressional response to the IRS's overstep with respect to staking has been bipartisan criticism. Congressmen have written the IRS to explain that, "[s]imilar to all other forms of taxpayer-created (or taxpayer-discovered) property—such as crops, minerals, livestock, artworks, and even widgets off the assembly line—these tokens could be taxed when they are *sold*." Letter from Rep. Schweikert et al. to Comm'r Rettig (July 29, 2020), perma.cc/GB8J-MBAT (emphasis added).

## C. Taxing Jarrett's tokens would result in impermissible overtaxation.

114. Taxation of Jarrett's new tokens is not permitted for a second, independent reason: his new tokens do not represent his economic gain.

115. Even if the income tax could reach new property in other contexts—or even if Jarrett's tokens were *not* his new property—Jarrett's 13,714 tokens could not be included in his taxable income.

116. Taxable income requires not only that the taxpayer receive the income from someone else, but also that the item represent "economic gain." *Moore*, 144 S. Ct. at 1691.

117. The income tax taxes gains. If something is not a gain, the tax code does not permit it to be taxed. *See* 26 U.S.C. 61(a).

118. For a proceed to be taxable income, it must be "a gain, a profit" to the taxpayer. *Phellis*, 257 U.S. at 169; *accord Bowers v. Kerbaugh-Empire Co.*, 271 U.S. 170, 175 (1926). "[T]he mere diminution of loss is not gain, profit, or income." *Id.*

21

119. When the taxpayer has both gains and losses in units of substantially identical property as part of the same operation, the gains cannot be segregated and treated as income without regard for the corresponding losses.

120. Jarrett's 13,714 new tokens do not represent $32,836 in economic gain because diminution in the value of existing tokens proportionately offsets the value of new tokens.

121. Stakers may create new tokens only in proportion to their share of existing tokens. That is, a person staking with 1 percent of all staked tokens is presumptively entitled to create 1 percent of all *new* tokens. If every token holder stakes, that means the 1 percent staker will, as he creates new tokens, maintain a 1 percent share of all tokens. In that case, a staker has zero economic gain from staking, as all others also create new tokens in proportion to *their* holdings. Each staker will begin and end the year with the same share of all tokens.

122. The new tokens are substantially identical to the existing ones that the staking process correspondingly dilutes in value. Though there is no "issuer" of Tezos tokens—because stakers create them—taxing the new tokens would be akin to taxing company shareholders on the value of new substantially identical shares received from the company in a stock split.

123. In Tezos, not all token holders participate in staking, and participation fluctuates. In 2020, on average, about 80 percent of Tezos tokens were staked.

22

124. Accordingly, Jarrett's economic gain from staking was not $32,836 but rather, at most, only about 20 percent of that amount.

125. Including Jarrett's 13,714 new tokens in income therefore overstates his economic gain by a factor of five.

126. The words "all income from whatever source derived," 26 U.S.C. §61(a), cannot be read to sweep in the value of tokens which is not the taxpayer's gain. If they could, then the resulting tax would be an impermissible unapportioned direct tax on Jarrett's property.

127. By contrast, taxation of gains at the time of disposition of Jarrett's tokens ensures an accurate statement of Jarrett's actual economic gain and eliminates the overtaxation.

**D. Any doubts must be resolved in Jarrett's favor.**

128. Any doubts about whether Jarrett's tokens are taxable as income must be resolved in Jarrett's favor.

129. "It is a rule sanctioned by many authorities, and particularly with reference to the revenue laws of the United States, that a statute imposing taxes is to be construed strictly against the government and in favor of the taxpayer." Black 66.

130. As Justice Story put it, there is a "general rule in the interpretation of all statutes, levying taxes or duties upon subjects or citizens, not to extend their provisions, by implication, beyond the *clear import* of the language used, or to enlarge their operation so as to embrace matters, not specifically pointed out, although standing upon a close

23

analogy. In every case, therefore, of doubt, such statutes are *construed most strongly against the government*, and in favor of the subjects or citizens, because burdens are not to be imposed, nor presumed to be imposed, beyond what the statutes expressly and clearly import." *United States v. Wigglesworth*, 28 F. Cas. 595, 596-97 (C.C.D. Mass. 1842) (emphases added); *accord, e.g.*, *Hartranft v. Wiegmann*, 121 U.S. 609, 616 (1887) ("if the question were one of doubt, the doubt would be resolved in favor of [the taxpayer], 'as duties are never imposed on the citizen upon vague or doubtful interpretations'"); *Am. Net & Twine Co. v. Worthington*, 141 U.S. 468, 474 (1891) ("were the question one of doubt, we should still feel obliged to resolve that doubt in favor of [the taxpayer], since the intention of congress to impose a higher duty should be expressed in clear and unambiguous language"); *Murphy v. IRS*, 493 F.3d 170, 179 (D.C. Cir. 2007) (collecting authorities for the proposition that "an ambiguity in the meaning of a revenue-raising statute should be resolved in favor of the taxpayer").

131.    Therefore, "if any substantial and reasonable doubt arises as to whether any particular fund or kind or class of gain or acquisition constitutes taxable 'income' within the meaning of the law, it is to be resolved in favor of the taxpayer and not in favor of the government." Black 68.

## IV.    The IRS intentionally moots Jarrett's first lawsuit challenging the IRS's view, forcing Jarrett to repeat the pattern of paying the erroneous tax and then seeking judicial relief.

132.    Jarrett creates Tezos tokens through staking every year.

24

133.    Every year, he creates tokens that the IRS publicly says are taxable at the time of creation, but are not.

134.    Every year, he puts himself at risk if he does not report the excess income according to the IRS's view. Given the IRS's public position, Jarrett cannot comfortably refuse to pay the taxes that the IRS demands. If he did, the IRS could bring a legal action against him for failure to pay his taxes.

135.    The Anti-Injunction Act bars pre-enforcement lawsuits to challenge tax liability. A taxpayer must instead pay the tax, file an administrative-refund claim, and then wait six months before filing a tax-refund suit. *See* 26 U.S.C. §7421, §7422, §6532. During that six-month waiting period, the IRS can provide the refund and resolve the dispute. §6532. The tax-refund process is costly and time-consuming.

136.    Jarrett already went through this process on this same exact issue regarding his 2019 tax return.

137.    He reported the value of his created (but not sold) Tezos tokens as income in 2019, in accordance with the IRS's view. He paid income tax on the value of those tokens. He filed an administrative-refund claim. He told the IRS in-depth how he created the tokens and why those tokens are not taxable upon creation. The IRS did not offer a refund or respond. After the statutory waiting period lapsed, Jarrett filed a tax refund suit to have this issue resolved. *See Jarrett v. United States*, 2022 WL 4793235.

138.    But to avoid judicial scrutiny of its position, the IRS intentionally mooted

25

Jarrett's first case before dispositive briefing. It mailed him a refund, but refused to be bound by any judgment stating that Jarrett's tokens were not taxable. And it refused to agree to any resolution that would settle the issue in future years.

139.    Instead, the government mooted the case to avoid having to defend the IRS's erroneous position in court. *See* Tr. of Oral Argument at 21:15-24:10, *Jarrett v. United States*, 79 F.4th 675 (6th Cir. 2023); *see also* Reid, *U.S. Internal Revenue Service Issues Guidance on Staking*, Baker McKenzie (Aug. 17, 2023), perma.cc/UF2U-8D9V ("Clearly the government did not issue the refund to the Jarretts because of a change of heart regarding the proper treatment of staking rewards, but was merely trying to avoid creating legal precedent contrary to its position."); *IRS Releases Guidance on Cryptocurrency 'Staking' Rewards*, Cooley (Aug. 4, 2023), perma.cc/R2H3-7UG9 (noting that the government sent Jarrett a check because it "apparently preferred to establish principles through subregulatory guidance rather than through the courts").

140.    Jarrett argued that the case was not moot, in part because the same issue repeats every year and the IRS tells him that he has to report his created tokens as income in those future years, so the government's action simply forced him to continue to comply with a rule that he had already properly challenged. Jarrett lost that mootness argument, so he has had to start again at square one. *See Jarrett v. United States*, 2022 WL 4793235 (dismissing all claims as moot); *Jarrett v. United States*, 79 F.4th 675 (affirming).

141.    The government said that it sought to avoid litigation for two reasons.

First, because it had not yet decided its position on the taxability of Jarrett's tokens at the time. Tr. of Oral Argument at 21:15-24:10. It now has. *See* Notice 14-21, 2014-16 I.R.B. 938-40, perma.cc/7ZYD-5ESE; *see also Gov't 28J Response*, Dkt. 37, at 1, *Jarrett v. United States*, 79 F.4th 675 (6th Cir. 2023) (No. 22-6023). And second, because of the expense of litigating Jarrett's relatively small claim. Tr. of Oral Argument at 21:15-24:10. That reason will be true for Jarrett every year.

142.    Jarrett has now been forced into the same process for the next year, since the government refused to agree to any protection for future years. For the 2020 tax year, he has once again reported the value of his new tokens as income, in accordance with the IRS's view.

143.    The Jarretts timely filed their joint 2020 federal income tax return and amended return with the Internal Revenue Service. The Jarretts reported $32,836 from the creation of new Tezos tokens as "other income" on Schedule 1 of their amended return.

144.    In October 2023, the Jarretts timely filed a Form 1040-X administrative-refund claim with the Internal Revenue Service. The refund claim asserted that the $32,836 was not income subject to taxation. The claim requested a refund of the $12,179 in tax paid on that amount, plus the interest paid on that tax payment.

145.    As of the date of this filing, no response has been received to the refund claim.

146. As of the date of this filing, no notice of disallowance has been mailed to the Jarretts.

147. The Jarretts are the sole owner of their refund claim, and they have neither assigned nor transferred any part of that claim.

148. In the Jarretts' next taxable years, the Jarretts did not have deductions, losses, or other items that would prevent their reporting of another overpayment.

149. The statutory waiting period has now lapsed.

150. Jarrett seeks an order awarding him a refund of $12,179, plus interest.

151. In addition, Jarrett seeks an ancillary injunction preventing the IRS from taxing his same category of created tokens as income in future years.

152. Injunctions are generally available in refund suits. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 748 n.22 (1974); *Cohen v. United States*, 650 F.3d 717, 740 & nn.5-6 (D.C. Cir. 2011) (en banc) (Kavanaugh, J., dissenting).

153. The IRS agrees that injunctions are available in refund suits. *See Refund Litigation*, Internal Revenue Manual: Part 34.5.2 (Apr. 22, 2021), perma.cc/TU8T-UQ9P ("A taxpayer may seek a refund of tax or other relief such as the following: (a) Both a refund of tax and other relief, such as an injunction against the collection of similar tax in the future.").

154. An injunction is particularly appropriate here because denying it would deprive Jarrett of access to judicial review of a recurring violation of his legal rights.

28

Denial of judicial review would also violate Jarrett's statutory "right to challenge the position of the Internal Revenue Service and be heard." 26 U.S.C. §7803(a)(3)(D).

## CLAIM FOR RELIEF

155. The Jarretts hereby incorporate by reference and restate the previous allegations.

156. The 13,714 new Tezos tokens created by Jarrett during 2020 were not "income" as required for the IRS to tax them under the federal income-tax statute. *See* 26 U.S.C. §61(a); U.S. Const., am. XVI.

157. They did not "com[e] in." *Phellis*, 257 U.S. at 169.

158. They were not "derived" from a "source." 26 U.S.C. §61(a); U.S. Const., am. XVI.

159. They were not "clearly realized." *Commissioner v. Glenshaw Glass*, 348 U.S. 426, 431 (1955).

160. And they did not represent "economic gain." *Moore*, 144 S. Ct. at 1691.

161. Accordingly, the $32,836 reported on the Jarretts' first amended 2020 tax return is not income, and the Jarretts are accordingly entitled to a refund for the 2020 year in the amount of $12,179, plus statutory interest as provided by law.

## PRAYER FOR RELIEF

The Jarretts respectfully request that the Court grant the following relief:

A. A judgment that the disputed federal income taxes were erroneously assessed;

B. An order awarding the Jarretts a refund for the 2020 tax year in the amount of $12,179, plus statutory interest thereon as provided by law;

29

C. An order awarding the Jarretts their costs in this action, including attorneys' fees;

D. A permanent injunction against the Internal Revenue Service, preventing it from treating tokens created by the Jarretts as income;

E. A declaration that the disputed federal income taxes were erroneously assessed;

F. An award of such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 10, 2024

*/s/ Cameron T. Norris*
Cameron T. Norris
Jeffrey S. Hetzel*
Daniel Shapiro*
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
Telephone: 703.243.9423
cam@consovoymccarthy.com

J. Abraham Sutherland*
106 Connally Street
Black Mountain, NC 28711
Telephone: 805.689.4577

*pro hac vice admission applications forthcoming

*Attorneys for Plaintiffs*

30