IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JOSHUA JARRETT and JESSICA JARRETT, | ) ) ) | Case No. 3:24-cv-01209 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

Introduction.................................................................................................................. 1

Argument ..................................................................................................................... 1

I.      The Jarretts have the burden to show that § 61(a) does not apply to staking rewards or that another provision of the code excepts them............................................................ 2

II.     The Jarretts have not shown as a matter of law that staking rewards are not income under 26 U.S.C. § 61(a), and in fact the undisputed facts show the opposite........................................... 4

    A.   It is immaterial whether staking rewards are "self-created" property, as they meet the definition of income under § 61(a) and *Glenshaw Glass*. ........................................................... 4

    B.   Even if it mattered whether staking rewards are "self-created," the facts show that they are not or (at minimum) that there is a triable issue of fact on this issue. .................................. 7

III.    The Jarretts have not shown and cannot show as a matter of law that any other provision of the Internal Revenue Code excludes staking rewards from gross income. ................................ 9

    A.   The Jarretts have not argued any "express provision" excludes staking rewards from gross income, and thus have waived any argument on that point................................................. 9

    B.   The Jarretts' analogies to other types of self-created property are inapt. ......................... 10

IV.    The Jarretts' argument that the taxation of staking rewards is an unconstitutional direct tax is barred under the substantial variance doctrine and, even if it were not, has no merit as a matter of law. ..................................................................................................................... 11

V.     The Jarretts can offer no evidence, other than their expert's *ipse dixit*, that the value of staking rewards is less than their fair market value because of supposed dilution........................ 13

VI.    Injunctive relief is not available in a refund suit.................................................................. 16

Conclusion .................................................................................................................. 17

# Table of Authorities

**Cases**                                                                                                    **Page(s)**

*Altria Grp., Inc. v. United States*,
   No. CV 3:23CV293, 2025 WL 2772756 (E.D. Va. Sept. 29, 2025) .......................................12

*Baker v. Comm'r*,
   88 T.C. 1282 (1987)........................................................................................................13, 15

*Bob Jones University v. Simon*,
   416 U.S. 725 (1974)................................................................................................................16

*Christian Coalition of Fla., Inc. v. United States*,
   No. 5:09-cv-144-Oc-10GRJ, 2010 WL 3061800 (M.D. Fla. Aug. 3, 2010),
   *aff'd*, 662 F.3d 1182 (11th Cir. 2011)....................................................................................16

*Cohen v. United States*,
   650 F.3d 717 (D.C. Cir. 2011)................................................................................................16

*Comm'r of Internal Revenue v. Sunnen*,
   333 U.S. 591 (1948)................................................................................................................17

*Comm'r v. Glenshaw Glass*,
   348 U.S. 426 (1955)..................................................................................................... *passim*

*Comm'r v. Schleier*,
   515 U.S. 323 (1995)..................................................................................................................3

*Cooper v. Shelby County, Tenn.*,
   No. 07-2283-STA-cgc, 2010 WL 3211677 (W.D. Tenn. Aug. 10, 2010).................................6

*Greer v. United States*,
   207 F.3d 322 (6th Cir. 2000) ......................................................................................1, 3, 9, 10

*Griffin v. Comm'r*,
   315 F.3d 1017 (8th Cir. 2003) ................................................................................................15

*Heger v. United States*,
   103 Fed. Cl. 261 (2012) ..........................................................................................................15

*Koons v. United States*,
   315 F.2d 542 (9th Cir. 1963) ..................................................................................................14

*Lockheed Marin Corp. v. United States*,
   210 F.3d 1366 (Fed. Cir. 2000)...............................................................................................12

*Marandola v. United States*,
   76 Fed. Cl. 237 (Fed. Cl. 2007) ..............................................................................................12

Case 3:24-cv-01209    Document 51    Filed 05/22/26    Page 3 of 22 PageID #: 1359

*Mgmt. Invs. v. United Mine Workers of Am.*,
610 F.2d 384 (6th Cir. 1979) ............................................................................7

*Moore v. United States*,
602 U.S. 572 (2024)........................................................................................13

*Murphy v. IRS*,
493 F.3d 170 (D.C. Cir. 2007) ..........................................................................3

*NetJets Large Aircraft, Inc. v .United States*,
80 F. Supp. 3d 743 (S.D. Ohio 2015) ...............................................................2

*Oklahoma Tax Comm'n v. United States*,
319 U.S. 598 (1943)..........................................................................................9

*Pipitone v. United States*,
180 F.3d 859 (7th Cir. 1999) .............................................................................3

*Stadnyk v. C.I.R.*,
367 F. App'x 586 (6th Cir. 2000) ......................................................................9

*Sutherland v. Egger*,
865 F.2d 56 (3d Cir. 1989)................................................................................3

*Taggi v. United States*,
35 F.3d 93 (2d Cir. 1994) ..................................................................................3

*United States v. Merriam*,
263 U.S. 179 (1923)..........................................................................................2

*Williams v. Blough*,
No. 1:23-cv-1038, 2024 WL 5294449 (W.D. Mich. Dec. 17, 2024).......................................10

*Young v. Comm'r*,
240 F.3d 369 (4th Cir. 2001) ............................................................................3

**Statutes**

26 U.S.C.

§ 1.....................................................................................................................14

§ 61.......................................................................................................... *passim*

§ 83.................................................................................................................6, 13

§ 447................................................................................................................10

§ 1221..............................................................................................................10

§ 7421.................................................................................................................................16

§ 7422.................................................................................................................................16

§ 7428.................................................................................................................................16

§ 7491.................................................................................................................................15

28 U.S.C.

§ 2201...............................................................................................................................16

**Regulations**

26 C.F.R. § 1.61-3...............................................................................................................10

26 C.F.R. § 1.61-4...............................................................................................................10

26 C.F.R. § 1.61-14.............................................................................................................5

31 C.F.R. § 301.6402-2.......................................................................................................12

**Introduction**

In this tax refund suit, the plaintiffs must show that their cryptocurrency staking rewards are not included in their gross income under 26 U.S.C. § 61(a). This statute is unambiguous and construed liberally, and the Jarretts invoke no other part of the Code to exempt their rewards from taxation. The parties agree on all the material facts about what cryptocurrency is and the procedures by which newly minted cryptocurrency staking rewards come into being. The dispute is what the statute and these procedures mean. The Government relies on the Code and the Supreme Court's decision in *Glenshaw Glass*. The Jarretts, for their part, rely on analogies to *other* types of property that are taxed the way they want staking rewards to be taxed.

But analogies do not supersede the Tax Code, nor can they create a triable issue of fact. Since staking rewards meet the statutory standard and the Supreme Court's test for income, the Jarretts cannot prevail on summary judgment by analogizing to other things. Determining how certain property *should* be taxed is the province of Congress. So if the Jarretts want staking rewards to be taxed in the same way as inventory, chattels, or intellectual property, their remedy is legislative, not judicial. The Court should deny their motion for summary judgment and grant the Government's motion.

**Argument**

The Jarretts have the burden of proving the amount by which they overpaid their federal income tax for the year at issue. Since their refund claim is based on the argument that staking rewards are not includable in their gross income, they have the burden to show that staking rewards are either (1) not within the reach of 26 U.S.C. § 61(a); or (2) excepted from the definition by another provision of the Internal Revenue Code. *Greer v. United States*, 207 F.3d 322, 326 (6th Cir. 2000).

The Jarretts' motion for summary judgment meets neither standard. While they invoke the idea of "self-created property" to argue that 26 U.S.C. § 61(a) does not apply here, they admit every material fact necessary to conclude that such rewards *are* taxable income under § 61(a) and *Comm'r v. Glenshaw Glass*. And they do not show—because they cannot show—that some other provision of the Internal Revenue Code excepts staking rewards specifically or "self-created property" generally from income. In short, not only are they not entitled to summary judgment on these points, their motion shows that the Government is entitled to summary judgment.

Finally, the Jarretts' position that their gain from staking is actually less than the fair market value of their rewards is supported by nothing but the ipse dixit of their own expert. Because they have offered no admissible evidence that the issuance of newly minted cryptocurrency *actually* dilutes it below the fair market value at which it is sold and exchanged on public markets, they cannot prove they overpaid their taxes.

## I. The Jarretts have the burden to show that § 61(a) does not apply to staking rewards or that another provision of the code excepts them.

The Jarretts suggest that despite having the burden to prove their entitlement to a refund, "when the interpretations of a term in the tax code is at issue, 'any doubt as to the breadth of the term … must be resolved against the government and in favor [of] the taxpayer.'" ECF No. 39 (Pl. Mot. Summ. J.) at 12.[1]

Not so. A taxing statute is only to be "resolved against the government" when "the words [of the statute] are doubtful". *United States v. Merriam*, 263 U.S. 179, 187–88 (1923). In the case on which the Jarretts rely, *NetJets Large Aircraft, Inc. v .United States*, the question was whether the statutory term "taxable transportation" reached a "fractional ownership program through which [the plaintiff] provides aircraft maintenance services to persons who either own a fractional

---

[1] Page citations to documents filed on the docket are to the ECF (or pdf) page number.

2

ownership interest or factional leasehold in an aircraft." 80 F. Supp. 3d 743, 745 (S.D. Ohio 2015). But the court in *NetJets* did not interpret an ambiguous statute, let alone in favor of the taxpayer. Rather, it ruled *against* the taxpayer on collateral estoppel grounds. *Id.* at 754–55. And the prior preclusive opinion, *Exec. Jet Aviation v. United States*, decided the statute was *not* ambiguous and was not required to be resolved against the Government. 125 F.3d 1463, 1468 (Fed. Cir. 1997).

Courts have not treated the basic income statute, 26 U.S.C. § 61(a), as ambiguous or construed it against the Government. To the contrary, § 61(a) is given "a liberal construction . . . in recognition of the intention of Congress to tax *all gains* except those specifically exempted." *Comm'r v. Glenshaw Glass*, 348 U.S. 426, 430 (1955); *Greer v. United States*, 207 F.3d 322, 326 (6th Cir. 2000).[2] Since § 61(a) is "liberally construed," it is the provisions that *exclude* matters from § 61(a) that are narrowly construed. *Comm'r v. Schleier*, 515 U.S. 323, 328 (1995) ("We have repeatedly emphasized the 'sweeping scope' of this section and its statutory predecessors. We have also emphasized the corollary to § 61(a)'s broad construction, namely the 'default rule of statutory interpretation that exclusions from income must be narrowly construed.'").

Because of that, the Jarretts have the burden to show both here at summary judgment and at trial that § 61(a) (given a "liberal construction") does not apply to staking rewards, or that another provision of the code ("narrowly construed") excludes them. *Schleier*, 515 U.S. at 323; *Greer*, 207 F.3d at 326; *accord Pipitone*, 180 F.3d at 861–862 ("In contrast to the liberal construction afforded to § 61(a), exclusions from income are narrowly construed. In essence, all accessions to wealth are taxable unless the taxpayer demonstrates that the gain at issue fits within

---

[2]  *See also Pipitone v. United States*, 180 F.3d 859, 861–62 (7th Cir. 1999); *Murphy v. IRS*, 493 F.3d 170, 176 (D.C. Cir. 2007); *Taggi v. United States*, 35 F.3d 93, 95 (2d Cir. 1994); *Young v. Comm'r*, 240 F.3d 369, 376 (4th Cir. 2001); *Sutherland v. Egger*, 865 F.2d 56, 58 (3d Cir. 1989).

a particular statutory exclusion from income. And in a tax refund suit, the taxpayer bears the burden of proving the amount he is entitled to recover.").

**II.     The Jarretts have not shown as a matter of law that staking rewards are not income under 26 U.S.C. § 61(a), and in fact the undisputed facts show the opposite.**

### A.   It is immaterial whether staking rewards are "self-created" property, as they meet the definition of income under § 61(a) and *Glenshaw Glass*.

Plaintiffs assert that the "self-created" nature of staking rewards means they cannot meet the definition of income. ECF No. 39 at 17–18. Relying almost exclusively on treatises, Black's Law Dictionary, and sources other than the Internal Revenue Code, they define "income" by reference to its origin or "source." ECF No. 39 at 14–16. According to the Jarretts, property can only be income if it "comes in" as a transfer from an external "source" that is a legal person. ECF No. 39 at 21. Whatever appeal the Jarretts' argument has as a matter of semantics, it is immaterial and fails as a matter of law.

To start, the Jarretts' claim that "self-created property" cannot be income because it is not derived from a "source" under § 61 has no support in the law. The test for includable income under § 61(a) does not turn at all on the "source" of the property. The opposite is true: the statute recognizes income "from whatever source derived." 26 U.S.C. § 61(a). There is no explicit or implicit limitation in the law or the cases interpreting it that "whatever source" excludes "oneself," or (as the Jarretts argue) that "oneself" is not a "source" at all. The lone case that the Jarretts cite for this claim, a 1954 decision of the Fifth Circuit called *Campbell v. Prothro*, does not turn on the "source" of the property. 209 F.2d 331 (5th Cir. 1954). In *Prothro*, the question was whether and when unrealized appreciation of livestock bred by the taxpayer was taxable. Thus, it was not a case about the *source* of the property; it was a case about the *realization* of gain (a separate requirement). The Jarretts have identified and can identify *no* cases where property was held to be untaxable because it lacked a third-party source. Indeed, treasure troves are not transferred from a

4

source either; they are discovered or found. Yet treasure troves are included in the gross income of the finder "in the year in which it is reduced to undisputed possession." 26 C.F.R. § 1.61-14(a).

Nor are the Jarretts correct that staking rewards must be compensation, and cannot be compensation unless they are received from a "legal person." ECF No. 39 at 21. Neither is true. Section 61(a) includes "compensation for services," as an example of "income," but it is only one example. And the example does not say, "compensation *from another legal person* for services." Section 83 references property that "is transferred *to* any person other than the person for whom such services are performed." Under that provision, while services must be performed "for" a person, the statute says nothing about the compensation coming *from* that person (or any person).[3]

The test for income turns not on its "source," but on the nature of the property. Under § 61(a), this Court must determine three things: (i) whether the property constitutes an "undeniable accession to wealth"; that is (ii) "clearly realized"; and (iii) "over which the taxpayers have complete dominion." *Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 430 (1955). There is no genuine dispute over any of the facts supporting these elements and none of them could support the Jarretts' position.

In fact, the Jarretts and their expert Mr. McKeon concede all the facts necessary to meet the *Glenshaw Glass* standard for income. In Section III of the Jarretts' memorandum, they adopt Mr. McKeon's position that the Jarretts received "economic gain from staking" on the date that the staking rewards became "spendable." ECF No. 39 at 24–28. The Jarretts and Mr. McKeon do not assert that "economic gain" is contingent in any way, but near-immediate and quantifiable. That is expressly the first and second elements of the *Glenshaw Glass* standard.

---

[3] Moreover, the Jarretts' description of the Tezos protocol as an "inanimate object," ignores the fact that while the network infrastructure might not be a natural or legal person, its users almost invariably are.

Similarly, the Jarretts and Mr. McKeon agree to all the facts necessary to conclude they realized income from their XTZ as soon as their staking rewards were "spendable." Because they are "spendable"—i.e., they can be used as a medium of exchange and as a substitute for real currency— they are not like chattels, goods, or inventory. This is undisputed: the parties' experts, the parties themselves, and the official public Tezos documentation all make clear that once a staker possesses newly minted units of XTZ, they can transfer and spend them as they please, including to pay for goods and services. ECF No. 36-2 (Kaal Rep.), ¶ 57. These rewards are not contingent like, say, a stock option that "vests" at a certain time. *See Id.*, ¶ 56. So, at the moment they became "spendable," the Jarretts had complete dominion and control over them, meeting the third element of *Glenshaw Glass*.

It is the "spendability" of staking rewards on receipt that differentiates it from other types of property for which income is realized upon sale. To be sure, for some other types of property, income may be (but is not always)[4] realized upon the sale of the property and its conversion into cash. But unlike the examples the Jarretts use—crops, manuscripts, or bread—cryptocurrencies trade around the clock on liquid markets. ECF No. 36-1 (McKeon Rep.), ¶ 56. And they can also be a "medium of exchange" (or as the Jarretts' expert put it, they can "serve as a form of money"). *Id.*, ¶ 37. Thus, because cryptocurrencies can be used "as a form of money" upon receipt , income can be immediately realized on receipt without a sale or exchange.

As discussed in the Government's cross-motion for summary judgment, all of these facts are salient, and none of them are subject to a "real dispute." *See Cooper v. Shelby County, Tenn.*,

---

[4] For example, as discussed in the Government's opening brief, when stock is distributed as compensation for services, it is taxed as ordinary income of the recipient in the first taxable year in which the rights of the person to the stock "are transferable or are not subject to a substantial risk of forfeiture." 26 U.S.C. § 83(a).

2010 WL 3211677, at *3 (W.D. Tenn. Aug. 10, 2010) (quoting *Mgmt. Invs. v. United Mine Workers of Am.*, 610 F.2d 384, 388–89 (6th Cir. 1979)). Accordingly, not only should the Court deny the Jarretts' motion for summary judgment on this issue, it should grant the Government's motion.

**B. Even if it mattered whether staking rewards are "self-created," the facts show that they are not or (at minimum) that there is a triable issue of fact on this issue.**

As discussed above, the Jarretts assign great weight to the idea that property is only income if it is "received" from an external source and that staking rewards are self-created and thus definitionally not "received" from anyone. ECF No. 39 at 21. They also posit that, unless the Government can show a "transfer" from one person (or digital address) to another, then no "income" can be deemed to have "come in." ECF No. 39 at 14, 17–18, 20–21.

In support of their position, and to avoid a ruling that there is a triable issue of fact on self-creation, the Jarretts preemptively attack the Government's expert, Wulf Kaal. They claim that Kaal's conclusion that staking rewards are issued from the Tezos protocol is dependent on a faulty premise: specifically, that the Tezos source code "transfers" newly minted XTZ from a "source account" to a staker's account for successfully validating new blocks. ECF No. 39 at 19–20. While they concede that is how the Tezos code has been organized since 2022, they correctly note that the code did not contain a "source" account in the year at issue here, 2020, and that the "source account" itself was "fictitious." *Id.* According to the Jarretts, this means there is no triable issue of fact as to whether staking rewards are self-created. *Id.*

The Jarretts' arguments rest on an inaccurate representation of the facts. While the Jarretts are correct that the Tezos protocol did not contain code for a "source" account until the protocol was amended in 2022, that fact does not carry the importance they claim it does. The inclusion of a "source" account concept in the Tezos code was not an entirely new method for issuing XTZ; it

was simply a "refactoring" of the code itself. A "refactoring" of the code is, by its terms, to reorganize code for clarity, not to change how it works.[5] ECF No. 40-13 (Kaal Suppl Rep.), ¶ 6 ("In the context of software development, refactoring refers to modifying the internal structure of code to improve clarity, maintainability, or organization without changing the external behavior or functionality of the system.").[6] Thus, while the terminology of "transfers" and "source accounts," were introduced in 2022; the underlying idea that new XTZ came from the protocol itself predated that.

In fact, the undisputed facts show that, at all times, the Tezos protocol has *issued* new XTZ to stakers. To start, though the Jarretts contend that they created staking rewards "from scratch," (ECF No. 39 at 9) the official Tezos documentation says otherwise. According to that documentation, the Tezos source code "issues" new [XTZ]| and stakers "receive" them. ECF No. 36-6 at 4 ("When a baker bakes a block, he receives a reward…"; 36-7 at 4–5 (same); 36-11 at 1 ("The Tezos economic protocol issues new tez. . ."). The Jarretts' own expert, Mr. McKeon, agrees these sources are "authoritative." ECF No. 36-5 (McKeon Dep.) at 60:19–61:1. In fact, according to Tezos' own documentation and source code, the only things that stakers create are new *blocks* for the blockchain ledger, for which they *receive* rewards.[7]

The suggestion that stakers "create" XTZ rewards ignores the substantial involvement of other stakers and the protocol itself in minting new XTZ. As the parties both agree, the Tezos

---

[5] When asked if he knew what code refactoring was, the plaintiffs' expert, Mr. McKeon, answered that he did not. Ex. 21 (McKeon Dep.) at 149:15–150:5.

[6] *See also*, "What is code refactoring?", IBM, accessed March 17, 2026, https://www.ibm.com/think/topics/code-refactoring.

[7] The very word "reward" negates the idea that property is self-created. When asked if he could identify any other example in any context of self-created property being called a "reward," the best example Mr. McKeon could posit was "the bounty as a crop as being a reward from God if you were sort of like a religious person." Ex. 21 (McKeon Dep.) at 156:19–157:5.

8

protocol provides that a staker cannot receive his or her rewards if they do not comply with the protocol's requirements. ECF No. 37, ¶ 31; ECF No. 36–1 (McKeon Rep.), ¶¶ 67–68; ECF No. 36-2 (Kaal Rep.), ¶¶ 21 & n.24, 22, 45. And, as both parties also agree, *other users* (i.e., attesters) can and do examine stakers' compliance with the rules. ECF No. 37, ¶¶ 28–31. So stakers cannot— on their own—control or decide whether they will receive rewards in a given cycle, or how many units of XTZ they will receive; they can only vote on the rules, and comply with the rules. ECF No. 37, ¶¶ 31, 50; ECF No. 40, ¶ 18. That is not self-creation of property.

### III.     The Jarretts have not shown and cannot show as a matter of law that any other provision of the Internal Revenue Code excludes staking rewards from gross income.

Because staking rewards meet the definition of "gross income" under § 61(a) and *Glenshaw Glass*, as an accession to wealth, clearly realized, over which the Jarretts have complete dominion, then the rewards must be included in income unless the Jarretts can invoke a statutory "exclusion." *Stadnyk v. C.I.R.*, 367 F. App'x 586, 690–91 (6th Cir. 2000). That exclusion must be "express," and the Jarretts have the burden of showing it applies. *Oklahoma Tax Comm'n v. United States*, 319 U.S. 598, 606 (1943); *Greer*, 207 F.3d at 326.

The Jarretts have not invoked and cannot invoke a statutory exclusion from income for "self-created property," other than by analogy. That is insufficient as a matter of law, and even if it were not, the factual differences in plaintiffs' proffered analogies render them useless for purposes of resolving the question here.

### A.   The Jarretts have not argued any "express provision" excludes staking rewards from gross income, and thus have waived any argument on that point.

As discussed above, there are two parts to the § 61(a) test: (1) whether the property at issue meets the definition of income; and (2) if so, whether another provision of the Code expressly excludes the property from income.

The Jarretts base their entire argument on the first part of this test, and ignore the second in their motion. But they have the burden as to both parts of the test. *Greer*, 207 F.3d at 326. Thus failure to address the second part of the test (express statutory exclusion) precludes summary judgment in their favor. *Williams v. Blough*, No. 1:23-cv-1038, 2024 WL 5294449, at *3 (W.D. Mich. Dec. 17, 2024).

**B.  The Jarretts' analogies to other types of self-created property are inapt.**

In an attempt to sidestep the fact that no provision of the Internal Revenue Code expressly excludes staking rewards from income, the Jarretts instead analogize staking rewards to other types of "self-created property" like bread (ECF No. 39 at 9), crops (*id.*) and creative works (*id.* at 19). They cite to no provisions of the Code addressing the taxation of these other types of property. But, even if they did, all their analogies are immaterial and inapt.

The Jarretts' analogies are legally immaterial because, unlike XTZ received as staking rewards, all the types of property plaintiffs point to have express provisions of the tax code dictating when gains are realized and are taxable, and at what rate. Generally, when someone sells bread as a business, "gross income means the total sales, less the cost of goods sold[.]" 26 C.F.R. § 1.61-3. Intangible property like music and writings are taxed at sale or exchange as ordinary income (rather than treated as capital assets). 26 U.S.C. § 1221(a)(3).[8] Crops are subject to yet another set of rules, including farming-specific accounting rules. *See* 26 U.S.C. § 447; 26 C.F.R. § 1.61-4.

But the Jarretts' analogies are also factually inapt. Take their analogies to self-created tangible property like bread. "Tokens, electricity, software and hardware" are not like bread

---

[8] Before the 2017 Tax Cuts and Jobs Act (TCJA), self-created intangibles were included in the definition of a capital asset and where thus not taxed as ordinary income upon sale.

ingredients (e.g., flour, etc.). The "ingredients" of tokens are not tangible at all; they are, at base, strings of ones and zeroes. Moreover, the rules by which bread is baked are determined by chemistry and physics; they are not determined by a group of other bakers who own bread, nor are the scientific rules of bread-baking subject to change by a vote of those bakers, and subject to withholding or forfeiture.[9] The same is largely true of crops. Crops are grown from tangible property (seeds), and governed largely by scientific rules and external factors like climate. The rules for growing crops are not voted on by other farmers, nor are crops sequestered for fourteen days upon harvesting and subject to forfeiture for rules violations.

The Jarretts' reliance on other types of intangible property fares no better. Although manuscripts, architectural plans, or musical works are not immediately taxable upon completion, they are not anything like staking rewards. The rules by which creative works are created are not voted on by other novelists, architects, or composers and enforced under penalty of forfeiture.

In short, whether a baker makes bread, whether a farmer harvests crops, and whether a novelist has a marketable manuscript, are not expressly conditioned on the agreement of others to the creation of the bread, crops, or manuscript. Staking rewards, however, are. This fundamental fact separates staking rewards from the other types of property whose income inclusion and taxation rules the Jarretts would prefer the Court apply by analogy. But as these types of property are fundamentally different from staking rewards, the analogies must fail.

**IV.     The Jarretts' argument that the taxation of staking rewards is an unconstitutional direct tax is barred under the substantial variance doctrine and, even if it were not, has no merit as a matter of law.**

The Jarretts next argue that, if staking awards are taxed as gross income, the tax constitutes a direct tax that must be apportioned among the states. ECF No. 39 at 16–17. This argument is

---

[9] For example, bread is not "frozen" beyond a baker's control for fourteen days and subject to forfeiture for violations of the rules of baking like staking rewards are.

procedurally deficient because it was not raised in their administrative refund claim. And it is meritless because, if staking rewards meet the definition of income, income taxes are definitionally not direct taxes. Put another way, if the Court finds in the Government's favor that staking rewards are income, their constitutional argument necessarily fails.

The Jarretts' constitutional argument fails first because they neglected to raise it administratively in their refund claim filed with the IRS, which is a jurisdictional prerequisite to a refund suit. 31 C.F.R. § 301.6402-2(b)(1); *Lockheed Marin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (substantial variance doctrine "bars a taxpayer from presenting claims in a tax refund suit that substantially vary the legal theories and factual bases set forth in a tax refund claim presented to the IRS"). This includes a challenge to the constitutionality of an IRS position. *See Marandola v. United States*, 76 Fed. Cl. 237, 249 (Fed. Cl. 2007); *Altria Grp., Inc. v. United States*, No. CV 3:23CV293, 2025 WL 2772756, at * 15 (E.D. Va. Sept. 29, 2025). While the Jarretts' refund claim contains a sentence that says the taxation of staking rewards "contradicts. . . the constitution," that is not enough. ECF No. 36-19 (Def. Ex. 19) at USAJAR000141. Merely invoking the entire Constitution does not "give the IRS notice" of the argument that taxing staking awards is an unapportioned "direct tax," in violation of the "Direct Tax Clause." *Cf. Altria Grp., Inc. v. United States*, 2025 WL 2772756, at *16 (E.D. Va. Sept. 29, 2025) (refund claim containing Fifth Amendment argument that raised applicable "control" theory in footnote). Thus, "because the administrative refund claim filed by plaintiff made no mention whatever of the alternative ground, it cannot now be considered." *Id*. (quoting *Andresen v. United States*, 405 F.2d 1232, 1359 (Ct. Cl. 1969)).

Although this argument cannot be presented for the first time here, were the Court to consider it, the Jarretts' constitutional argument would fail on the merits. While the Jarretts are

12

correct that "direct taxes" (i.e., "taxes imposed on persons or property") must be "apportioned among the States," that doctrine has no applicability here. The case on which the Jarretts rely, *Moore v. United States*, makes clear what has always been the rule: "Because income taxes are indirect taxes, they are permitted under Article I, § 8 without apportionment." 602 U.S. 572, 583 (2024). If the tax is on *income*; then the tax is an income tax. *Moore*, 602 U.S. at 589. This case is an income tax case, so if staking rewards are income (which they are), then taxes on staking rewards cannot, by definition, constitute a "direct tax."

**V.     The Jarretts can offer no evidence, other than their expert's *ipse dixit*, that the value of staking rewards is less than their fair market value because of supposed dilution.**

Even if their staking rewards are taxed as income on receipt, the Jarretts insist that their value is not accurately reflected by prices set by actively traded markets. According to their expert, the fair market value of their rewards overstates their economic gain by nearly five times because the issuance of new tokens dilutes the value of all existing tokens. The Jarretts thus contend that, if they must be taxed on their staking rewards, they should be taxed on a lesser amount. Their argument is meritless and without legal or factual support.

To start, the law provides that the measure of the Jarretts' gain from staking rewards is their fair market value at the time they were received. *See Baker v. Comm'r*, 88 T.C. 1282, 1288 (1987) ("Gross income includes the fair market value of property received in payment for goods and services." (citing 26 U.S.C. § 61(a) and 26 C.F.R. § 1.61-2(d)(1))); *see also* 26 U.S.C. § 83(a) (service providers must include in their income the fair market value of the property they received, minus any amount paid by them for the property). This is because the "sound administration of the tax laws requires that there be as nearly objective a measure of the value of [goods or] services that are includible in income as possible, and the only such objective measure that has been

suggested to us, or that occurs to us, is fair market value." *Koons v. United States*, 315 F.2d 542, 545 (9th Cir. 1963).

The Jarretts nevertheless assert that the proper measure of their gain is not fair market value but an "imputed dilution" formula. The formula essentially calculates a downward adjustment for the potential inflationary effects of new tokens.[10] But the Jarretts cite to no code provision or other authority to support their claim that they are entitled to use "imputed dilution" to decrease the fair market value of their staking rewards by roughly 80%. Taxpayers do not get a downward adjustment on cash income because of inflation. If Congress wants to allow for such adjustments, it can do so. Indeed, multiple code provisions deal with inflation explicitly. *See, e.g.*, 26 U.S.C. § 1(f). With no authority to support their claim, the Court should accordingly decline to create a judicial exception that would tax staking rewards at a markedly reduced value.

The Jarretts' position that dilution is real fares no better. The sole basis for their claim rests on analogizing the issuance of staking rewards to stock splits. But XTZ is not stock and staking rewards are not issued proportionally among all holders of XTZ like stock splits are. ECF No. 37, ¶ 71. Nor do the Jarretts offer any evidence beyond this analogy other than their expert's assertion that it is so. Mr. McKeon has done no type of econometric analysis to support this theory and even admits that such an analysis is difficult if not impossible. ECF No. 36-5 (McKeon Dep.) at 108:5–10 ("very difficult to do an economic analysis in the context of supply increases from staking because it's effectively . . . happening all the time."); 135:14–136:2 ("you don't have a discrete event to test as an econometrician"); *cf.* ECF No. 36-13 (McKeon Rebuttal Rep.), ¶ 39 ("difficult if not impossible").

---

[10] Plaintiffs inexplicably argue that this formula (which is based on determining fair market value and then finding how many people are staking) is easier to use and administer than using fair market value. ECF No. 39 at 22–23.

Indeed, their dilution claim is not supported by economic theory or market evidence. ECF No. 37, ¶¶ 88–93. New XTZ tokens are issued according to deterministic protocol rules which are public, stable, and known to all market participants. *Id.*, ¶ 89. As a result, issuance of new XTZ tokens is fully anticipated and "priced in." ECF No. 37, ¶ 90; ECF No. 36-5 (Ex. 5 (McKeon Dep.)) at 103:8–10 ("information is priced in as soon as that information becomes publicly available to market participants"), 109:5–7 ("fair to say that the price is an aggregate of . . . [demand-side and supply-side] variables"). Market data also shows no predictable downward pressure on XTZ's price coinciding with each issuance cycle, which, if it existed, would be consistent with the Jarretts' dilution claim. ECF No. 37, ¶ 91.

The Jarretts finally suggest that despite having the burden to prove their entitlement to a refund, they have shifted that burden to the government under 26 U.S.C. § 7491(a). ECF No. 22 at 22 (citing *McGowan v. United States*, 143 F.4th 686, 695 (6th Cir. 2025)). Not so. Under this statute, taxpayers may shift the burden to the United States if they provide "credible evidence" on a factual issue. Materials summited at the summary judgment stage, however, cannot be "credible evidence." *See Griffin v. Comm'r*, 315 F.3d 1017, 1021 (8th Cir. 2003) (agreeing with the definition from the legislative history that credible evidence is "the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted"); *see also Heger v. United States*, 103 Fed. Cl. 261, 266 (2012) ("Evidence held by courts to be credible includes expert witness reports and testimony . . . and documentary evidence presented *at trial*." (emphasis added) (internal citations omitted)).

In any event, whether fair market value is the proper measure of the Jarretts's taxable gain is a legal one. And the Jarretts have provided no evidence for dilution beyond having their expert

say it occurs. They thus fail to carry their burden of showing that the market price does not accurately account for the value of the XTZ staking rewards they received. *Baker*, 88 T.C. 1282.

## VI. Injunctive relief is not available in a refund suit.

The Jarretts also argue that they are entitled to declaratory and injunctive relief, specifically an order "declar[ing] that Jarrett's staking rewards are not taxable as income until they are disposed of" and "an injunction barring the IRS from enforcing its incorrect interpretation of the tax code to Jarrett's staking in future years." ECF No. 39 at 21–22. Again, this argument fails as a matter of law.

The prospective relief sought by the Jarretts is unavailable in a refund suit. The Declaratory Judgment Act (28 U.S.C. § 2201) expressly prohibits declaratory relief "with respect to federal taxes," except under 26 U.S.C. § 7428 (which deals with the classification and status of certain tax-exempt organizations). Similarly, the Tax Anti-Injunction Act (26 U.S.C. § 7421) bars suits "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). As the Supreme Court has made clear, the Declaratory Judgment Act is "at least as broad" as the Anti-Injunction Act, so the unavailability of declaratory relief necessarily precludes injunctive relief too. *Bob Jones University v. Simon*, 416 U.S. 725, 733 n.7 (1974); *Cohen v. United States*, 650 F.3d 717, 722, 732 (D.C. Cir. 2011).

A forward-looking injunction as to future tax years is also contrary to the limited nature of refund jurisdiction. Under 26 U.S.C. § 7422, "each year is the origin of a new liability and of a separate cause of action." *Christian Coalition of Fla., Inc. v. United States*, No. 5:09-cv-144-Oc-10GRJ, 2010 WL 3061800, at *6 (M.D. Fla. Aug. 3, 2010), *aff'd*, 662 F.3d 1182 (11th Cir. 2011). So even if the Jarretts prevail here, "a determination by this Court for the tax year[] at issue would be nothing more than an advisory opinion for future years." *Id.* At *most*, the Court's ruling here would only collaterally estop the United States from relitigating the issues decided in this case in

future tax years involving the Jarretts. *See Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 598 (1948).

**Conclusion**

For all these reasons, the Jarretts cannot meet their burden to prove that they overpaid their federal income taxes in 2020. The Court should deny their motion for summary judgment and grant the Government's motion.

Dated: May 22, 2026

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax
Litigation Branch

*/s/ Ryan O. McMonagle*
RYAN O. MCMONAGLE
STEPHEN S. HO
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-307-1355; 202-616-8994 (v)
202-514-6866 (f)
Ryan.McMonagle@usdoj.gov
Stephen.S.Ho@usdoj.gov

17