IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

JOSHUA JARRETT and )
JESSICA JARRETT, ) Case No. 3:24-cv-01209
)
     Plaintiffs, )
)
     v. )
)
UNITED STATES OF AMERICA, )
)
     Defendant. )
_____ )

**UNITED STATES' RESPONSE TO
PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.01(e), the United States

responds to the plaintiffs' separate statement of facts as follows:

**I.     Cryptocurrency, blockchains, and Tezos**

1.     A cryptocurrency is a "digital payment system operating independently of a central

authority and employing cryptographic techniques to control and verify transactions in a unique

unit of account." McKeon-Rep. (Exh.A) at 41 (Definition of "Cryptocurrency").

**Response to 1:** Undisputed.

2.     A blockchain is "a database that acts as a distributed digital ledger of crypto

transactions." McKeon-Rep. at 40 (Definition of "Blockchain"); Kaal-Rep.-App'x-C (Exh.G)

(Definition of "Blockchain").

**Response to 2:** Undisputed.

3.     The basic unit of a blockchain is a block, which is "a digital unit containing data on

a set of verified cryptocurrency transactions." McKeon-Rep. at 40 (Definition of "Block"); Kaal-

Rep.-App'x-C at 66-67 (Definition of "Block").

**Response to 3:** Undisputed.

4. In the context of blockchains, a "protocol" refers to the "set of rules, standards, and procedures that govern how the blockchain network operates, ensuring security, consensus, and functionality." McKeon-Rep. ¶36; Kaal-Rep.-App'x-C at 67 (Definitions of "Consensus Protocol" and "Consensus Mechanism").

**Response to 4:** Undisputed.

5. Every blockchain has a consensus mechanism, which is a "system that allows all participants in a blockchain to agree on which transactions are legitimate and should be validated." McKeon-Rep. at 41 (Definition of "Consensus Mechanism"); Kaal-Rep.-App'x-C (Definitions of "Consensus Protocol" and "Consensus Mechanism").

**Response to 5:** Undisputed for the purpose of summary judgment.

6. One kind of consensus mechanism is "proof of stake." McKeon-Rep. at 42 (Definition of "Proof-of-Stake"); Kaal-Rep. ¶21.

**Response to 6:** Undisputed.

7. Tezos is a proof-of-stake cryptocurrency. Answer (Doc.15) ¶2; *Jarrett I* Decl. (Exh.B) ¶4; Jarrett-Decl. (Exh.C) ¶¶3-5; McKeon-Rep. ¶62; Kaal-Rep. ¶21.

**Response to 7:** Undisputed that Tezos uses proof-of-stake consensus mechanism, but disputed that Tezos is a cryptocurrency. Tezos is the name of the underlying blockchain. ECF No. 36-2 (Kaal Rep.), ¶ 37.

8. The native cryptocurrency asset of the Tezos blockchain is called tez, or XTZ. McKeon-Rep. ¶50; Kaal-Rep. ¶21.

**Response to 8:** Undisputed.

2

9.     A staker is "one of many terms used to describe an individual who possesses cryptocurrency and participates in the process of validating transactions on a blockchain." McKeon-Rep. at 43 (Definition of "Staker"); Kaal-Rep.-App'x-C (Definition of "Staker").

**Response to 9:** Undisputed that a staker validates transactions on a blockchain. Disputed that the term staker applies to an individual who holds any cryptocurrency and validates transactions on any blockchain: "staker" refers only to a "participant in a Proof-of-Stake network who commits (stakes) crypto assets—either directly by running a validator node or indirectly by delegating to a validator—to secure the network and support the consensus process." ECF No. 36-2 at 72 (App'x C).

10.     Stakers create blocks of transactions. Answer ¶33.

**Response to 10:** Undisputed that stakers can create blocks of transactions. Disputed that stakers always create blocks of transactions. ECF No. 36-2 at 72 (App'x C) ("Definition of "slashing").

11.     The blocks of transactions created by stakers form the blockchain. Answer ¶34.

**Response to 11:** Undisputed.

12.     When a Tezos staker creates or endorses a block on the Tezos blockchain, new Tezos tokens enter circulation. McKeon-Rep. ¶¶23, 65; Kaal-Rep. ¶¶28 & n.34, 63, 75.

**Response to 12:** Undisputed that when a Tezos staker succesfully validates or endorses a block on the Tezos blockchain, new Tezos tokens enter circulation.

13.     A Tezos staker possesses the new Tezos tokens that enter circulation as a result of staking. McKeon-Rep. ¶22; Kaal-Rep. ¶12 & n.5.

**Response to 13:** Undisputed.

3

14. Prior to the staker, no other person possesses the new Tezos tokens that enter circulation as a result of staking. McKeon-Rep. ¶¶21, 74; McKeon-Rebut. (Exh.N); Kaal-Depo.-Tr. (Exh.I) at 43:21-45:1.

**Response to 14:** Undisputed, but immaterial.

15. When new Tezos tokens that enter circulation as a result of staking appear in a staker's Tezos account, no existing holder of Tezos tokens loses tokens from their account. Kaal-Depo.-Tr. at 42:18-21.

**Response to 15:** Disputed. A portion of each transaction of existing XTZ tokens that stakers validate is remitted to the validator of the block as a "fee." Undisputed that the issuance of newly-issued XTZ does not result in a debit from an existing holder's account. Disputed that staking rewards "appear" in a staker's account; they are "credited" to the staker's account. ECF No. 36-1, ¶ 74; ECF No. 36-2, ¶¶ 23, 42.

16. When new Tezos tokens that enter circulation as a result of staking appear in a staker's Tezos account, the Tezos blockchain does not record a transaction between the staker's account and any other person's account. McKeon-Rep. ¶¶21, 74; McKeon-Rebut.- Rep. ¶19.

**Response to 16:** Disputed. The Tezos blockchain records the staking rewards on the blockchain. ECF No. 36-1, ¶ 55; ECF No. 36-2, ¶ 15. Disputed that staking rewards "appear" in a staker's account; they are "credited" to the staker's account. ECF No. 36-1, ¶ 74; ECF No. 36-2, ¶¶ 23, 42. Undisputed that the recording does not reflect a transaction between two users' accounts.

17. Staking on Tezos "depends on the adherence to predefined math as instantiated in the consensus protocol." Kaal-Depo.-Tr. at 27:9-17.

**Response to 17:** Undisputed.

18. No individual validator has discretion to approve or deny staking rewards outside the protocol rules. Kaal-Depo.-Tr. at 28:2-5.

**Response to 18**: Undisputed.

19. The staking process generates reward tokens. Kaal-Depo.-Tr. 38:12-39:23.

**Response to 19:** Undisputed.

20. When new Tezos tokens that enter circulation as a result of staking appear in a staker's Tezos account, the total supply of Tezos tokens increases. Kaal-Depo.-Tr. at 52:20-22.

**Response to 20:** Disputed that staking rewards "appear" in a staker's account; they are "credited" to the staker's account. ECF No. 36-1, ¶ 74; ECF No. 36-2, ¶¶ 23, 42. Undisputed that the total supply of Tezos tokens increases, but immaterial.

21. The Tezos Foundation is a nonprofit organization, specifically a Swiss foundation supervised by the Swiss Federal Foundation Supervisory Authority. Kaal-Depo.-Tr. at 30:4-10.

**Response to 21**: Undisputed for the purpose of summary judgment only, but immaterial.

22. The Tezos Foundation offers to pay Tezos tokens to security researchers and contributors in exchange for documenting bugs in the software. McKeon-Rebut. ¶20 & n.1.

**Response to 22**: Undisputed for the purpose of summary judgment only, but immaterial.

23. When the Tezos Foundation pays a bug bounty in XTZ to a security researcher or contributor, the Tezos blockchain records a transaction between the payor's account and the payee's account. McKeon-Rebut. ¶20 & n.1.

**Response to 23:** Undisputed for the purpose of summary judgment only, but immaterial.

24. The Tezos protocol is a piece of open-source software, "meaning that the original creators cannot unilaterally change the protocol after it is released." McKeon-Rep. ¶85, Kaal-Rep. ¶37; Kaal-Depo.-Tr. at 30:14-17.

5

**Response to 24:** Undisputed that Tezos is a piece of open-source software and that the protocol in use by the network cannot be unilaterally changed.

25. Put differently, the Tezos protocol is "math instantiated in code." Kaal-Depo.-Tr. at 30:24.

**Response to 25:** Undisputed.

26. The Tezos protocol is not an individual. Kaal-Depo.-Tr. at 31:3-4.

**Response to 26:** Undisputed, but immaterial.

27. The Tezos protocol is not a corporation. Kaal-Depo.-Tr. at 31:5-6.

**Response to 27**: Undisputed, but immaterial.

28. The Tezos protocol is not a partnership. Kaal-Depo.-Tr. at 31:7-8.

**Response to 28:** Undisputed, but immaterial.

29. The Tezos protocol is not an association. Kaal-Depo.-Tr. at 31:9-10.

**Response to 29:** Undisputed, but immaterial.

30. The Tezos protocol is not a syndicate. Kaal-Depo.-Tr. at 31:11-12.

**Response to 30:** Undisputed but immaterial.

31. The Tezos protocol is not a joint venture. Kaal-Depo.-Tr. at 31:13-14.

**Response to 31:** Undisputed, but immaterial.

32. The Tezos protocol is not an unincorporated association. Kaal-Depo.-Tr. at 31:15-16.

**Response to 31:** Undisputed, but immaterial.

**II.     The United States' treatment of cryptocurrency and staking**

33. The IRS considers cryptocurrency, including Tezos tokens, to be property. Answer ¶2.

6

**Response to 33:** Undisputed.

34. On July 23, 2023, the IRS issued Revenue Ruling 2023-14, which requires stakers to report staking reward tokens "as income at their fair market value upon having the ability to sell, exchange, or otherwise dispose of them." Answer ¶63; Rev. Rul. 2023-14 (July 23, 2023) (Exh.E).

**Response to 34:** Undisputed.

35. Revenue Ruling 2023-14 states that staking rewards "typically consist of one or more newly created units of the cryptocurrency native to that blockchain." Answer ¶¶63, 93; Rev. Rul. 2023-14 at 3.

**Response to 35:** Undisputed.

36. Staking rewards typically consist of one or more newly created units of the cryptocurrency native to that blockchain. Answer ¶¶63, 93; Rev. Rul. 2023-14 at 3.

**Response to 36:** Undisputed.

37. On November 24, 2025, the IRS published Revenue Procedure 2025-31. Rev. Proc. 2025-31, 2025-48 I.R.B. 743 (Nov. 24, 2025) (Exh.J).

**Response to 37:** Undisputed.

38. Revenue Procedure 2025-31 describes staking reward tokens as "newly minted digital assets." Rev. Proc. 2025-31 at 4.

**Response to 38:** Undisputed.

39. Revenue Procedure 2025-31 states that newly minted digital assets are credited to validators and that fees paid by parties seeking to add their transactions to the blockchain are transferred to validators. Rev. Proc. 2025-31 at 4.

**Response to 39**: Undisputed.

40. Newly minted digital assets are credited to validators and fees paid by parties seeking to add their transactions to the blockchain are transferred to validators. Rev. Proc. 2025-31 at 4.

**Response to 40:** Undisputed.

### III. Jarrett's Tezos staking

41. Plaintiffs, Joshua and Jessica Jarrett, reside in Nashville, Tennessee. Answer ¶1, ¶20; *Jarrett I* Decl. ¶1; Jarrett-Decl. ¶3.

**Response to 41:** Undisputed.

42. Since 2019, Josh Jarrett has owned Tezos tokens. Answer ¶2; *Jarrett I* Decl. ¶4; Jarrett-Decl. ¶¶3-5; McKeon-Rep. ¶62; Kaal-Rep. ¶21.

**Response to 42:** Undisputed for the purpose of summary judgment only, but immaterial that Mr. Jarrett has owned Tezos tokens for any year except the tax year at issue in this case, 2020.

43. In 2019, and every year since then, Jarrett has engaged in staking on Tezos. *Jarrett I* Decl. ¶4; Jarrett-Decl. ¶5; United States' Am. Resp. to Plaintiffs' Requests for Admissions (Exh.O) ¶1.

**Response to 43:** Undisputed for the purpose of summary judgment only, but immaterial that Mr. Jarrett has engaged in staking for any year except the tax year at issue in this case, 2020.

44. To stake, Jarrett uses electricity, software, hardware, and pre-existing Tezos tokens to produce and endorse new blocks on the Tezos blockchain. Jarrett-Decl. ¶5; McKeon-Rep. ¶¶18, 20, 74, 81; Kaal-Rep. ¶18.

**Response to 43:** Undisputed for the purpose of summary judgment only.

45. In 2019, Jarrett's staking resulted in 8,876 new Tezos tokens. *Jarrett I* Decl. ¶6; Jarrett-Decl. ¶3.

**Response to 45:** Undisputed for the purpose of summary judgment only, but immaterial.

46. Jarrett did not sell, exchange, or otherwise dispose of those 8,876 tokens during 2019. *Jarrett I* Decl. ¶6; Jarrett-Decl. ¶3.

**Response to 46:** Undisputed for the purpose of summary judgment only, but immaterial.

47. Jarrett and his wife reported those tokens as "other income" on their 2019 income tax return. Answer ¶12; *Jarrett I* Decl. ¶¶6-7; Jarrett-Decl. ¶3.

**Response to 47:** Undisputed for the purpose of summary judgment only, but immaterial.

48. In 2020, Jarrett and his wife filed a form 1040-X with the IRS claiming a refund for the taxes paid on their 2019 tokens. Answer ¶12; *Jarrett I* Decl. ¶7; Jarrett-Decl. ¶3.

**Response to 48:** Undisputed for the purpose of summary judgment only, but immaterial.

49. In May 2021, Jarrett and his wife filed a refund suit seeking the refund claimed in their 2019 1040-X. Answer ¶12; *Jarrett I* Decl. ¶8; Jarrett-Decl. ¶3.

**Response to 49:** Undisputed for the purpose of summary judgment only, but immaterial.

50. On February 15, 2022, the Jarretts' counsel received a refund check from the IRS addressed to Jarrett and his wife in the amount of $4,001.83. Answer ¶12; *Jarrett I* Decl. ¶8; Jarrett-Decl. ¶3; Forst-Decl. (Exh.D) ¶¶6-8.

**Response to 50:** Undisputed for the purpose of summary judgment only, but immaterial.

51. Counsel also received a Form 1331-B Notice of Adjustment for the Jarretts' 2019 tax year dated January 28, 2022, which stated that the check was "'made in accordance with the concession authorized in *Jarrett v. United States* filed on May 26, 2021.'" Forst-Decl. ¶7.

**Response to 51:** Undisputed for the purpose of summary judgment only, but immaterial.

52. Jarrett continued staking on the Tezos blockchain in 2020. Answer ¶¶2, 4, 48, 51, 143; Jarrett-Decl. ¶8; United States' Am. Resp. to Plaintiffs' Requests for Admissions ¶¶1-2.

9

**Response to 52:** Undisputed.

53. In 2020, Jarrett's staking resulted in 13,714 new Tezos tokens. Answer ¶¶4, 48, 51, 143; Jarrett-Decl. ¶8.

**Response to 53:** Undisputed.

54. During 2020, Jarrett staked on Tezos using the following baking addresses:

tz1gCx1V63bSaQnPZoQreqNgVLuFMzyMcqry; and

tz1NL14EZjUmY9eEdk1ejyACEaTuwVGVKEeU.

Jarrett-Decl. ¶9.

**Response to 54:** Undisputed for the purpose of summary judgment only.

55. Jarrett's staking activity can be viewed online using the tzkt.io block explorer. Jarrett-Decl. ¶10; McKeon-Rep. ¶¶84, 105, 107.

**Response to 55:** Undisputed.

56. On October 6, 2020, Jarrett produced Tezos block number 1,159,060, resulting in 40 new Tezos tokens. Jarrett-Decl. ¶11; McKeon-Rep. ¶105.

**Response to 56:** Undisputed for the purpose of summary judgment only.

57. This block and Jarrett's "block reward" of 40 XTZ can be viewed on the block explorer. Jarrett-Decl. ¶11 (citing tzkt.io/1159060); McKeon-Rep. ¶¶105-06.

**Response to 57:** Undisputed.

58. On January 25, 2020, Jarrett had the opportunity to confirm the validity of Tezos block number 795,951, which would have resulted in two new Tezos tokens in block number 795,952. Jarrett-Decl. ¶12; McKeon-Rep. ¶84.

**Response to 58**: Undisputed.

59.     Because Jarrett failed, two fewer XTZ were created in 2020 than would have otherwise been the case. Jarrett-Decl. ¶12 (citing tzkt.io/795952/attestations/missed); McKeon-Rep. ¶84.

**Response to 59:** Disputed; the fact cannot be presented in a form that would be admissible in evidence.

60.     Jarrett did not sell, exchange, or otherwise dispose of any of the 13,714 new tokens during 2020. Jarrett-Decl. ¶8.

**Response to 60:** Undisputed for the purpose of summary judgment only.

61.     Jarrett's transaction fees from staking consisted of about $0.04, or 4 cents, per day. Plaintiffs' Resp. to United States' Interrogatories (Exh.P) at 6-7; *Id.* (2020 Revised Staking Schedule); McKeon-Rep. ¶¶109-10 & Exh. 5.

**Response to 61:** Undisputed for the purpose of summary judgment only.

62.     99.3% of Jarrett's 13,714 reward tokens were related to staking on his two principal baking addresses, tz1gCx1V63bSaQnPZoQreqNgVLuFMzyMcqry and tz1NL14EZjUmY9eEdk1ejyACEaTuwVGVKEeU. Plaintiffs' Resp. to United States' Interrogatories at 6-7; *Id.* (2020 Revised Staking Schedule); McKeon-Rep. ¶¶108, 110 & Exh. 5.

**Response to 62:** Undisputed for the purpose of summary judgment only.

63.     Staking on the two principal addresses resulted in approximately 5.4 XTZ in fees and approximately 13,620 XTZ in non-fee staking rewards. Plaintiffs' Resp. to United States' Interrogatories at 6-7; *Id.* (2020 Revised Staking Schedule); McKeon-Rep. ¶110 & Exh. 5.

**Response to 63:** Disputed. Joshua Jarrett's schedules show that he received 13,713.63 XTZ in non-fee staking rewards including rewards for delegation activities. ECF No. 40-17 at 19.

11

Undisputed for the purposes of summary judgment only that Mr. Jarrett received approximately 5.4 XTZ in fees.

64. Staking on the two principal addresses resulted in approximately $13 in fees and approximately $32,618 non-fee staking rewards. Plaintiffs' Resp. to United States' Interrogatories at 6-7; *Id.* (2020 Revised Staking Schedule); McKeon-Rep. ¶110 & Exh.5.

**Response to 64:** Disputed. Joshua Jarrett's schedules show that he received $32,836 in non-fee staking rewards including rewards for delegation activities. ECF No. 40-17 at 19. Undisputed for the purposes of summary judgment only that Mr. Jarrett received approximately $12.95 in fees

65. Fees comprised 0.04% of the total tokens from staking on the two principal addresses. Plaintiffs' Resp. to United States' Interrogatories at 6-7; *Id.* (2020 Revised Staking Schedule); McKeon-Rep. ¶110 & Exh.5.

**Response to 65:** Undisputed for the purpose of summary judgment only.

66. Jarrett's 2020 staking resulted in less than 5.5 XTZ in fee tokens out of a total of 13,714. Plaintiffs' Resp. to United States' Interrogatories at 6-7; *Id.* (2020 Revised Staking Schedule); McKeon-Rep. ¶110 & Exh.5.

**Response to 66:** Undisputed for the purpose of summary judgment only.

67. Jarrett's 2020 staking resulted in less than $14 in FMV from fee tokens out of a total FMV of $32,836. Plaintiffs' Resp. to United States' Interrogatories at 6-7; *Id.* (2020 Revised Staking Schedule); McKeon-Rep. ¶110 & Exh. 5.

**Response to 67:** Undisputed for the purpose of summary judgment only.

68. Jarrett and his wife reported the 2020 tokens as $32,836 in "other income" in an amended return. Answer ¶¶4, 51, 143; Jarrett-Decl. ¶13.

**Response to 68**: Undisputed.

69. The $32,836 resulted in additional tax due of $12,179, consisting of $10,579 in new tax on that amount plus the loss of a $1,600 tax credit due to the increase in income. Jarrett-Decl. ¶17.

**Response to 69**: Undisputed.

70. Jarrett and his wife paid additional tax of $13,510, consisting of $12,179 plus $1,331 in interest. Jarrett-Decl. ¶17.

**Response to 70:** Undisputed.

71. If no tax was owed on the staking rewards, Jarrett and his wife would be entitled to a refund of $13,510, plus statutory interest. Jarrett-Decl. ¶17.

**Response to 71:** Undisputed for the purpose of summary judgment only.

72. If Jarrett's income from staking in 2020 was $7,023 rather than zero, he would be entitled to a refund of $10,913, plus statutory interest. Jarrett-Decl. ¶18.

**Response to 72:** Disputed; the fact cannot be presented in a form that would be admissible in evidence.

73. Jarrett and his wife properly filed a Form 1040-X with the Internal Revenue Service, requesting an appropriate refund of the tax they paid due to including the staking reward tokens in their 2020 income. Answer ¶¶12, 19, 135; Jarrett-Decl. ¶14.

**Response to 73**: Undisputed that the Form 1040-X constituted a timely claim for refund; disputed that the refund is "an appropriate refund of the tax they paid due to including the staking reward tokens in their 2020 income," as that is a question of law and not fact.

74. Receiving no response from the IRS, Jarrett and his wife filed this second refund suit. Answer ¶¶12, 19, 135; Jarrett-Decl. ¶15.

**Response to 74**: Undisputed.

75.     Not counting the $32,836 of disputed "other income" from Jarrett's staking, Jarrett and his wife reported $409,053 in adjusted gross income during the 2020 tax year. Jarrett-Decl. ¶16.

**Response to 75:** Undisputed for the purpose of summary judgment only that the Jarretts reported these amounts on their First Amended Form 1040 return dated August 24, 2023, and on their Second Amended Form 1040 return dated October 16, 2023. Disputed that the Jarretts reported any staking-related income on their original Form 1040 return dated April 29, 2021. ECF No. 36-16 at 1.

76.     After deductions, Jarrett and his wife reported $384,253 in taxable income and a total tax owed of $81,112. Jarrett-Decl. ¶16.

**Response to 76:** Undisputed that the Jarretts reported these amounts on the Original Form 1040 return dated April 29, 2021 and on their Second Amended Form 1040 return dated October 16, 2023. Disputed that the Jarretts reported these amounts on their First Amended Form 1040 return dated August 24, 2023. ECF No. 36-18 at 1.

77.     Jarrett and his wife reported tax payments of $80,305, meaning they owed an additional $807 in taxes. Jarrett-Decl. ¶16.

**Response to 77**: Undisputed that the Jarretts reported these amounts on Original Form 1040 return dated  April 29, 2021. Disputed that they reported that they owed a tax payment of $807 on their First Amended Form 1040 return dated August 24, 2023 or on their Second Amended Form 1040 return dated October 16, 2023. ECF No. 36-18 at 1, ECF No. 36-19 at 1.

78.     Jarrett and his wife paid that $807 when they filed their 2020 income tax return. Jarrett-Decl. ¶16.

**Response to 78**: Undisputed that the Jarretts paid $807 when they filed their original Form 1040 return on April 29, 2021.

79. Aside from the Jarretts' ongoing dispute with the IRS regarding whether new Tezos tokens from staking is taxable income, Jarrett has no basis to believe that any portion of the Jarretts' 2020 tax return is inaccurate. Jarrett-Decl. ¶19.

**Response to 79:** Disputed; the fact cannot be presented in a form that would be admissible in evidence.

80. Aside from the Jarretts' ongoing dispute with the IRS regarding whether new Tezos tokens from staking is taxable income, the IRS has never indicated that it disputes the Jarretts' tax reporting in 2020 or that it wishes to audit their 2020 income tax return. Jarrett-Decl. ¶20.

**Response to 80:** Disputed; the United States does dispute the non-reporting of staking rewards on the Jarretts' Second Amended Form 1040 return that forms the basis of this refund action.

81. The Jarretts work diligently to pay the precise taxes that they owe. As in past tax years, they do not expect to have deductions, losses, or other items in future tax years that would prevent reporting of another overpayment, aside from any overpayments from being forced to include new Tezos tokens from staking as "other income" on their tax returns. Jarrett-Decl. ¶21.

**Response to 81**: Disputed; the fact cannot be presented in a form that would be admissible in evidence. The fact is also immaterial.

82. Jarrett is not aware of any other case addressing this issue currently pending in any court. Jarrett-Decl. ¶22.

**Response to 82:** Disputed; the fact cannot be presented in a form that would be admissible in evidence.

## IV. The parties' expert testimony

83. Dr. Stephen McKeon earned a Ph.D. in management with a finance focus and a Master's in economics from Purdue University. McKeon-Rep. ¶7.

**Response to 83:** Undisputed.

84. From 2016 to 2021, Dr. McKeon taught and researched blockchains and crypto assets at the University of Oregon, the University of Cambridge, and the University of California, Berkeley. McKeon-Rep. ¶¶8, 10.

**Response to 84:** Undisputed.

85. Dr. McKeon was an assistant professor of finance at the University of Oregon from 2011 to 2017, and a tenured associate professor of finance from 2017 to 2022. McKeon-Rep. ¶6.

**Response to 85:** Undisputed.

86. Dr. McKeon was a visiting associate at the Cambridge Centre for Alternative Finance in 2019. McKeon-Rep. ¶6.

**Response to 86:** Undisputed.

87. While at Cambridge, Dr. McKeon conducted research on blockchains with a focus on publications directed at practitioners. McKeon-Rep. ¶11.

**Response to 87:** Undisputed.

88. Dr. McKeon has taught a comprehensive course on cryptocurrency assets, which he designed from scratch. McKeon-Rep. ¶¶8-10.

**Response to 88**: Undisputed.

89. Dr. McKeon's lesson plans on cryptocurrency assets have been used to develop cryptocurrency courses at several other universities, and he spoke at the inaugural Midwest

Blockchain Conference, hosted at the Michigan Ross School of Business by Michigan Blockchain, on building blockchain-based curriculum at the university level. McKeon-Rep. ¶9.

**Response to 89:** Undisputed.

90.     Dr. McKeon co-authored a publication titled "2nd Global Enterprise Blockchain Benchmarking Study," which analyzed data on sixty-seven live blockchain networks and reported findings on user motivations, use cases, rates of adoption, and technical features such as consensus algorithms. McKeon-Rep. ¶11.

**Response to 90:** Undisputed.

91.     Dr. McKeon co-authored an article on ancient antecedents to Bitcoin, published in Economic Anthropology, and two chapters in the Palgrave Handbook of Technological Finance titled "Law and Blockchains" and "Blockchain Trading and Exchange." McKeon-Rep. ¶12.

**Response to 91:** Undisputed.

92.     Dr. McKeon frequently speaks at major conferences on the topic of cryptocurrency assets, including Consensus Invest, Fluidity Summit, Digital Asset Summit, Token2049, Security Token Summit, Wall Street Blockchain Alliance, the McCombs Blockchain Conference, and the annual meeting of the Financial Management Association. McKeon-Rep. ¶14.

**Response to 92:** Undisputed.

93.     Dr. McKeon is currently a Managing Partner at Collab+Currency, a venture capital firm that invests in early-stage technology companies and protocols. McKeon-Rep. ¶6.

**Response to 93:** Undisputed.

94.     Collab+Currency has conducted due diligence on thousands of projects and invested in over 150 blockchain-related companies and protocols spanning nearly every vertical within the industry. McKeon-Rep. ¶15.

17

**Response to 94:** Undisputed.

95. Dr. McKeon has personally participated in governance processes for multiple blockchain protocols and companies. McKeon-Rep. ¶15.

**Response to 95**: Undisputed.

96. Dr. Wulf Kaal does not have a Ph.D. in finance. Kaal-Depo.-Tr. at 11:13-15.

**Response to 96:** Undisputed but immaterial.

97. "Ithaca," or the Ithaca 2 proposal, is an update to the Tezos protocol that was adopted on April 1, 2022 in Tezos block number 2,244,609. McKeon-Supp. (Exh.K) ¶5.

**Response to 97:** Undisputed

98. On February 1, 2022, a blog post was published titled "Refactoring the Management of Native Tokens in the Tezos Economic Protocol." Kaal-Rebut. (Exh.H) ¶12 n.16.

**Response to 98:** Undisputed.

99. The blog post states that "Source accounts" are "fictitious accounts with a virtually infinite balance." Kaal-Rebut. ¶12 n.16; Kaal-Depo.-Tr. at 58:16-22.

**Response to 99:** Undisputed.

100. The concept of source accounts discussed in the blog post was introduced in April 2022 in the Ithaca update. McKeon-Supp. ¶11; Kaal-Depo.-Tr. at 68:23-69:2; 95:1-97:10.

**Response to 100:** Undisputed.

101. Even after source accounts were introduced conceptually in the Ithaca update, "there is no blockchain representation of [a] source account." McKeon-Depo.-Tr. (Exh.M) at 78:17-18.

**Response to 101:** Disputed, but immaterial; the source account is coded into the Tezos source code. ECF No. 40-13 (Kaal Supp. Rep.), ¶¶ 5–7.

102.    Source accounts do not have a blockchain address on the Tezos blockchain. McKeon-Depo.-Tr. at 144:14-22.

**Response to 102**: Undisputed but immaterial.

103.    No one can view a source account using a block explorer. McKeon-Depo.-Tr. at 144:14-22.

**Response to 103:** Undisputed for the purpose of summary judgment only, but immaterial.

104.    No one can determine how many tokens are allegedly contained in source accounts. McKeon-Depo.-Tr. at 144:14-22; Kaal-Depo.-Tr. at 52:9-11.

**Response to 104:** Undisputed for the purpose of summary judgment only, but immaterial.

105.    Tokens allegedly contained in source accounts are not part of the supply of Tezos tokens. Kaal-Depo.-Tr. at 50:5-16, 51:23-52:1, 52:7-13.

**Response to 105:** Undisputed for the purpose of summary judgment only, but immaterial.

106.    Source accounts are fictitious; they do not exist. McKeon-Depo.-Tr. at 145:7–9; Kaal-Depo.-Tr. at 64:10-12; Kaal-Rebut. ¶12 n.16.

**Response to 106:** Disputed, but immaterial; source accounts exist in Tezos code. ECF No. 40-13 (Kaal Supp. Rep.), ¶¶ 6–7.

107.    In his testimony, the government's expert states that Tezos reward tokens "dilute at .00001 percent." Kaal-Depo.-Tr. at 70:13–16; 82:23–83:1; Kaal-Rep. ¶75 n.118.

**Response to 107:** Undisputed but immaterial.

108.    522,267 blocks were added on the Tezos network in 2020. Kaal-Rep. ¶75 n.117; Kaal-Depo.-Tr. at 72:1-3.

**Response to 108:** Undisputed but immaterial.

109. In 2020 Tezos reward tokens increased the total supply of Tezos tokens by about five percent. Kaal-Depo.-Tr. at 72:21-73:5.

**Response to 109:** Undisputed but immaterial.

110. In general, increasing the supply of a good puts downward pressure on its price. Kaal-Depo.-Tr. at 73:10-13.

**Response to 110:** Undisputed but immaterial.

111. It is possible for a single person to perform all the mining or staking on a blockchain. McKeon-Rep. ¶¶77-79; Kaal-Rebut. ¶¶27-28.

**Response to 111:** Disputed, but immaterial. ECF No. 36-3 (Kaal Rebuttal Rep.), ¶¶ 27–32.

112. It is possible for a single person to be the sole participant involved in staking on a duplicate version, or fork, of the Tezos blockchain. McKeon-Rep. ¶¶78-79; Kaal-Rebut. ¶¶27-28.

**Response to 112:** Disputed, but immaterial. ECF No. 36-3 (Kaal Rebuttal Rep.), ¶ 27–32.

Dated: May 22, 2026

<div style="margin-left:50%">

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax Litigation Branch


*/s/ Ryan O. McMonagle*
RYAN O. MCMONAGLE
STEPHEN S. HO
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
202-307-1355; 202-616-8994 (v)
202-514-6866 (f)
Ryan.McMonagle@usdoj.gov
Stephen.S.Ho@usdoj.gov

</div>