IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JOSHUA JARRETT and JESSICA JARRETT, | ) ) ) | Case No. 3:24-cv-01209 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

**UNITED STATES' REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**Argument**

### I. The Jarretts have the burden to show staking rewards are not income as a matter of law, and are wrong that the Government has the burden of proving they are taxable.

Throughout the summary judgment briefing in this case, the Jarretts have argued that the Government bears the burden of proving the taxability of cryptocurrency staking rewards. According to the Jarretts, despite the fact that this is a tax refund case, the Government bears the burden to show that staking rewards are includable in gross income under § 61(a), and disprove why other different tax treatment should not apply. In their opposition, they go as far as to say that "staking rewards are not covered by the tax code to begin with." ECF No. 54 at 22.

But that is not how the burdens in a refund case work. In all refund cases, the taxpayer has the burden of showing he or she is entitled to a refund. The Sixth Circuit has expressly said that extends to cases (as here) where the basis for the refund is the claim that certain income is not taxable under § 61(a). *Greer v. United States*, 207 F.3d 322, 326 (6th Cir. 2000); *see also Ginsburg v. United States*, 922 F.3d 1320, 1325 (Fed. Cir. 2019). The idea that the plaintiffs can simply assert that "staking rewards are not covered by the tax code," and then place the burden on the Government to show that they are turns the burden on its head.

### II. The Jarretts' definition of "income" by reference to its source is an incorrect statement of the law.

As the Jarretts did in their cross-motion for summary judgment, they claim that before the Court considers the *Glenshaw Glass* standard, it must first determine whether staking rewards are "income." According to the Jarretts, the definition of income requires gain to "come in" from a "separate" source, because § 61(a) contains the language "income from whatever source." And if it does not, they claim *Glenshaw Glass* does not even come into play. In other words, they look to § 61(a)'s use of the word "source," as part of the definition of income that must be met *before* the

1

Court considers what constitutes income under *Glenshaw Glass* and § 61(a). But this argument has no support as a legal or factual proposition, and thus cannot survive summary judgment.

The difference between the Jarretts' construction and the Government's is the difference between their refund claim surviving summary judgment and not. First, the Jarretts concede that no statutory exclusion applies to them, so they are left only with an argument that they "do not need a statutory exemption" because somehow § 61(a) is not even triggered here. ECF No. 54 at 22. To that end, under the Jarretts' construction, the statutory phrase "from whatever source derived" *limits* the universe of gains included in gross income to those "derived from a [third party] source." And that, they say, cannot occur here because staking rewards are "self-created." Under the Government's construction, the Court first determines whether the gain is "income," and the phrase "from whatever source derived," is a term of *expansion*, rather than limitation. But only the Government's construction is consistent with the statute's language, and the "cardinal principle that Congress in creating the income tax intended 'to use the full measure of its taxing power.'" And only the Government's construction allows this Court to construe § 61(a) "liberally 'in recognition of the intention of Congress to tax *all gains* except those specifically exempted.'" *Greer v. United States*, 207 F.3d 322, 316 (6th Cir. 2000).

The Government's construction is the right one, because the Jarretts' construction is backwards. Section 61(a) does not use the words "from whatever source derived" to define and limit what "income" is for the purpose of applying *Glenshaw Glass* and other cases. Cases like *Glenshaw Glass* define[1] whether a gain is income under § 61(a), and § 61(a) determines whether

---

[1] Importantly, "*Glenshaw Glass* do[es] not provide a universal definition of income." *Moore v. United States*, 36 F.4th 930, 937 (9th Cir. 2022), *aff'd*, 602 U.S. 572 (2024). The Supreme Court also noted that, section 61(a) is "based upon the 16th Amendment and the word 'income' is used in its constitutional sense." *Glenshaw Glass*, 348 U.S. at 432 n.11

2

it is included in gross income. So, if a "gain" meets the *Glenshaw Glass* test, it is income, and if it is income, it is then included in "gross income" under § 61(a). *See Landsen v. Marsh*, 961 F. Supp. 1143, 1146 (M.D. Tenn. 1997) ("The Court adopted a broad definition of income [in *Glenshaw Glass*]. . . . This expansive interpretation of income has remained controlling."). "In essence, *all accessions to wealth* are taxable unless the taxpayer demonstrates that the gain at issue fits within a particular statutory exclusion from income." *Pipitone v. United States*, 180 F.3d 859, 862 (7th Cir. 1999) (emphasis added).

On June 4, 2026, the United States Tax Court, applying this rubric, agreed that staking rewards are income under *Glenshaw Glass*, and disagreed they are self-created property. *Paschall v. Comm'r*, No. 7382-24, 2026 WL 1597503 at *4–*6 (U.S. Tax. Ct. 2026) ("Stakers do not create anything by themselves . . . the cryptocurrency's protocol grants stakers additional tokens").

**III. The Jarretts cannot create a triable issue of fact as to "realization" by invoking incorrect legal standards and contradicting their own expert.**

The Jarretts next argue that the "realization" requirement is a "constitutional requirement" for the inclusion of property and gross income and that they did not "realize" income upon receipt. Realization, they say, requires that they "receive something new and valuable beyond the property [they] already own[.]" ECF. No. 54 at 15 (quoting *Moore*, 602 U.S. at 611 (Barrett, J., concurring)). And that, according to the Jarretts, requires an "other event" or "step" beyond the minting of the rewards. ECF No. 54 at 17–18. In support of these arguments, they cite almost exclusively to the concurrence in *United States v. Moore*, 602 U.S. 572 (2024). ECF No. 54 at 11, 15, 18. But, again, their attempts to create a new legal standard for cryptocurrencies falls flat.

As to the first point, the Jarretts are wrong that the Supreme Court has held "realization" is a constitutional requirement, or even a requirement in every single case. In fact, the Supreme Court expressly said in *Moore* that "we do not decide that question today." 602 U.S. at 598. Thus, the

Ninth Circuit's decision in *Moore* that "whether the taxpayer has realized income does not determine whether a tax is constitutional" is undisturbed. *Moore*, 36 F.4th at 935. More accurately, the Supreme Court has held that "the concept of realization is founded on administrative convenience." *Cottage Sav. Ass'n v. C.I.R.*, 499 U.S. 554, 559 (1991); *Helvering v. Horst*, 311 U.S. 112, 116 (1940). The realization requirement, as applied to the appreciation of certain types of property, allows the taxpayers and the IRS to avoid the "cumbersome, abrasive, and unpredictable administrative task" of "valuing assets on an annual basis to determine whether the assets had appreciated or depreciated in value." *Cottage Sav. Ass'n*, 499 U.S. at 559. The appreciation of the value of already-held XTZ over time is not at issue here; the value upon receipt of new XTZ is. To that end, the testimony of Mr. McKeon shows there is nothing "cumbersome" or "unpredictable" about valuing staking rewards upon receipt.

As to the latter point, again the Jarretts' reliance on the concurrence in *Moore* does not get them where they want to go. Even if the concurrence were the majority's holding in *Moore*, it is undisputed that staking rewards are "new and valuable" and not the "property they already own" at the time they are minted. Indeed, the Jarretts' entire "self-created property" theory of taxation is *premised upon* the fact the staking rewards are "new" once they are minted. Thus, at the time the rewards were minted, they were not and could not be "property [the Jarretts] already own." ECF No. 54 at 20 ("no one else owned the [newly minted staking rewards tokens] before Mr. Jarrett did."); 24 (same).

The Jarretts' suggestion that some "other event" is required beyond the minting of the new tokens before gain is realized is also contrary to what their own expert says. Mr. McKeon "computed [Mr.] Jarrett's economic gain from staking activities in 2020." He calculated that gain based on the "value that they hold sort of before and after the creation of the [tokens]"; *i.e.,* at the

time they are minted. ECF No. 55 (Pl. Resp. to SSUMF), Resp. ¶¶ 70–71, 86–87. He did not decline to value them at all because of market unpredictability, or contingencies, or any of the other reasons that Congress defers realization for other types of property. As we noted in our motion, and the Jarretts ignore, the fact that XTZ tokens are *spendable* after a brief security freeze —i.e., can be used to pay for goods or services or as collateral—shows that the Jarretts realized real, quantifiable, gain. *Id.*, ¶¶ 69–71, 86–87.

**IV.     The Jarretts cannot create a triable issue of fact as to the value of their rewards.**

The Jarretts admit that whether the fair market value of their staking rewards is the proper measure of their taxable gain is a question of law. ECF No. 54 at 24. They insist, however, that the market price of rewards overstates their gain because of the inflationary effects of new tokens. In support, they rely on cases addressing additional shares a shareholder receives in stock splits. But XTZ is not stock.[2] And the Jarretts provide no evidence besides this analogy for why prices on actively traded markets are inflated or why purchasers would opt to buy XTZ for more than they would be actually worth. Taxpayers do not get a downward adjustment on cash income because of inflation. If Congress wants to allow for such adjustments, it can do so. *See, e.g.*, 26 U.S.C. § 1(f). Plaintiffs have thus not created a triable issue of fact as to the value of their rewards.

**Conclusion**

For all the reasons stated in the Government's motion for summary judgment and this reply, the Court should enter judgment in the Government's favor.

---

[2] XTZ rewards are not distributed pro rata among all holders, and (unlike corporate shares of stock) do not represent a proportional interest in a company's assets and earnings.

5

Dated: June 5, 2026

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax
Litigation Branch

*/s/ Ryan O. McMonagle*
RYAN O. MCMONAGLE
STEPHEN S. HO
Trial Attorneys
Tax Litigation Branch
Civil Division, Department of Justice
P.O. Box 227
Washington, D.C.  20044
202-307-1355; 202-616-8994 (v)
202-514-6866 (f)
Ryan.McMonagle@usdoj.gov
Stephen.S.Ho@usdoj.gov

6